Joseph J. SAUNDERS

v.

**WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY.**

Timothy D. SMITH

v.

**WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY.**

**Civ. A. Nos. 616–73, 721–73.**

United States District Court,
District of Columbia.

May 10, 1973.

458

Joseph J. Saunders, Washington, D. C., William J. Howard, Washington, D. C., for plaintiffs.

Peter J. Ciano, Washington Metropolitan Area Transit Authority, Washington, D. C., Jordan S. Himelfarb, Asst. Gen. Counsel, Washington Metropolitan Area Transit Authority, Washington, D. C., for defendant.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

These consolidated actions are before the Court on Plaintiffs' Motions for a Preliminary Injunction. Plaintiffs in both cases are all residents of the area of 37th and Yuma Streets, North West, Washington, D. C., who seek to enjoin construction of a subway route, segment A–9a, through that area. In addition Plaintiffs seek to halt construction of a contiguous segment of the subway route, segment A–6a, on the grounds that construction of that segment would foreclose adoption of alternative plans for the A–9a segment. The vicinity of 37th and Yuma Streets, North West, is a residential area characterized by substantial, attractive homes, well cared for lawns and gardens and quiet, tree-lined streets. The A–9a segment, as presently planned, will proceed under five residential blocks on Yuma Street, linking two major thoroughfares, Connecticut and Wisconsin Avenues. Construction will be done by underground tunneling for the most part, though some surface disruption both temporary and permanent, is likely. The A–9a route segment was the subject of a public hearing for inter-

ested area residents on November 9, 1971.

Plaintiffs contend that the public hearing held by Defendant Transit Authority (hereafter Metro) on the proposed subway segment A–9a was so flawed as to be inadequate to suffice as the public hearing required by law. Plaintiffs contend that Metro had an obligation at or prior to the public hearing on the Yuma Street segment of the subway route to provide information concerning the adverse impact of the subway on Yuma Street, specially that vent shafts, with metal grates at the surface, would be required in the vicinity of 37th and Yuma Streets.[1] Plaintiffs also contend that Metro unlawfully failed to consider environmental and aesthetic factors, in adopting the A–9a route plan, and further that Metro was required, but failed, to prepare an environmental impact statement pursuant to the National Environmental Policy Act, 42 U. S.C. § 4332.[2]

■ Defendant has moved, pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure, that the determination on the Preliminary Injunction in this matter be treated as a final determination on the merits of the case. That motion will be granted. Accordingly, the Court has looked not merely to the likelihood of success on the merits,[3] but, there appearing no material issue of fact in dispute, has made a final determination on the merits of Plaintiffs' claims.

■ With regard to Plaintiffs' claims that Metro failed to consider any environmental and aesthetic factors as required by law,[4] the record is clear that these matters were the subject of much comment at the public hearing [5] and that those comments and other relevant materials were given due consideration [6] by the Metro Board of Directors in adopting the A–9a route plan. Plaintiffs' contentions on this point are without merit. With regard to the alleged requirement for an environmental impact statement,

1. It is undisputed that Metro knew at the time of the public hearing that such facilities would be required in that area. Defendant has attempted to make much of the fact that no *precise* locations for the vent shafts had been determined at the time of the public hearing. It was announced at the hearing and in public notices of the hearing that such vent shafts would be necessary at intervals along the subway route but that the locations of such facilities "cannot presently be determined." In fact, a Composite Plan drawn up for Metro some months before the hearing contained a map showing the shafts located at 37th and Yuma Streets. Additionally, Metro knew from engineering requirements that the shaft would have to be located in the *vicinity* of 37th and Yuma Streets. Boberg Affidavit.

The very purpose of the public hearing, however, was to give interested citizens the opportunity to comment on general plans *before* they had become precise or definite, in order that the public's comments could be taken into account in formulation of the final plan. See D.C. Federation of Civic Associations v. Volpe, 140 U.S.App.D.C. 162, 434 F.2d 436, 442–443 (1970); The Bootery, Inc. v. W.M.

A.T.A., 326 F.Supp. 794, 802 (D.D.C. 1971).

2. Plaintiffs further raise procedural objections about the presence of a quorum of Metro Directors at the public hearing and a lack of a presiding officer from the District of Columbia. It is unnecessary to reach these issues in light of the disposition of the case.

3. Virginia Petroleum Jobbers Association v. F. P. C., 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).

4. Washington Metropolitan Area Transit Authority Compact, § 14(c); 80 Stat. 1324, set forth as Note to 1 D.C.Code § 1431 (1967), The Bootery, Inc. v. W.M.A. T.A., 326 F.Supp. 794 (D.D.C.1971).

5. See generally, Transcript of Public Hearing, Nov. 9, 1971. Discussion was extended on noise and vibration problems, traffic patterns, and, notably, route alternatives to use of Yuma Street.

6. Plaintiffs' Exhibits 3 (Staff Review of Public Hearing) and 4 (Minutes of Board Meeting adopting A–9a route plan.).

the National Environmental Policy Act by its terms applied only to Federal agencies.[7] Metro was created by Interstate Compact and is an agency only of its constituent jurisdictions. The Compact was ratified by Congress,[8] as required by the Constitution for all such Compacts[9] and was authorized and approved by Congress on behalf of the District of Columbia as a signatory jurisdiction.[10] But Plaintiff has offered nothing which indicates that Metro thereby became a Federal agency.[11]

■■ With regard to the adequacy of the public hearing on the A–9a route segment, however, the Court finds Plaintiffs' contentions on firmer ground. The Metro Compact requires that public hearings be held on the transit plan,[12] which plan is to include the design and location of transit facilities,[13] and vent shafts are clearly included in the Compact's definition of such facilities.[14] They are a "major element"[15] of the A–9a route plan and the record indicates that they may have a significant impact on residential Yuma Street.[16] The Bootery[17] case specifically outlined the

purpose of public hearings on Metro plans:

"... the language and clear intent of the Compact require that an affected party have an adequate opportunity to challenge the Authority's proposals as they may adversely affect his or her interests."[18]

Defendant contends that the *Bootery* decision is applicable only to persons to be dislocated by Metro construction. It is true that the Court in that case focused its attention on parties to be displaced, but that was the plight of the Plaintiffs in that case. This Court does not view the *Bootery* as so limited. In the *Bootery* the Court noted that dislocation of families and businesses was specifically mentioned in the Metro Compact.[19] So also in the same subsection of the Compact are mentioned "environmental amenities and aesthetics."[20] It is the conclusion of the Court that Plaintiffs had a right under the Compact to be heard with respect to the design and location of vent shafts in the vicinity of 37th and Yuma Streets.[21] This aspect

7. 42 U.S.C. § 4331.

8. Public Law 89–774, 80 Stat. 1324, Nov. 6, 1966.

9. Article 1, Section 10, Clause 3.

10. Public Law 86–794, 74 Stat. 1031, Sept. 15, 1960, Public Laws 89–774, 80 Stat. 1324, Nov. 6, 1966.

11. Metro has in fact recently prepared an environmental impact statement which is presently under review. Metro has not thereby conceded, however, that it is a Federal agency, but merely that Federal agencies will be involved in some aspects of its activities, such as river crossings. There is no suggestion that any Federal agency is involved in planning or construction of the A–9a route segment.

12. W.M.A.T.A. Compact, § 15.

13. *Id.* § 13(a)(2).

14. *Id.* § 1(f).

15. Plaintiffs' Exhibit 14 (W.M.A.T.A. Contract Procurement Documents).

16. As presently planned, construction of the vent shafts in question would neces-

sitate removal of three large trees in the 3700 Block of Yuma Street, two on the north side and one on the south side, Report on the Yuma Street Vent Shaft Location at 37th Street—Section A–9; W.M.A.T.A., Feb. 19, 1973; Defendant's Exhibit, at 4. Two serrated metal surface grates, five by fifty feet, would displace the trees and grass in public space between the curb and sidewalk on both sides of the street. There is no specific discussion of noise problems or noise alleviation measures to be associated with the vent shafts.

17. The Bootery, Inc. v. Washington Metropolitan Area Transit Authority, 326 F. Supp. 794 (D.D.C.1971).

18. 326 F.Supp. at 800.

19. *Id.* at 801.

20. Compact, § 14(c)(1).

21. The Court finds it unnecessary to pursue Plaintiffs' contentions that Metro actively concealed its intentions and the existence of plans for the vent shafts prior to and at the public hearing. If the plans were in existence they should have been disclosed. If they were not in

of environmental impact was not previously considered by the Metro Board. The 1971 hearing was defective in this regard and Metro will be ordered to hold a new public hearing on the A–9a segment. The hearing will be limited, however, to the location and design of vent shafts in the vicinity of 37th and Yuma Streets, North West. The Court finds that all other aspects of the A–9a route segment here disputed were previously accorded due consideration and opportunity for public comment. There is no likelihood that those other aspects, including route location, would be so affected by a public hearing on location and design of vent shafts as to warrant a full hearing de novo on all aspects of the A–9a route segment.

■■■ The Court does not accept Plaintiffs' broad reading of the word "details" in Paragraph 8 of the *Bootery* decree.[22] There is no need for a public hearing on each minor "detail" of Metro plans, but only on the major elements of the plan such as stations, routes, station access points and fan and vent shafts. The word "major" in this sense should not be defined by arguments over semantics, the cost of construction, or size of the facility. The real public interest in opportunity to be heard should be measured in the impact of the facility on people affected, whether that be by actual displacement, taking of property, or removal of trees and altering the character of a neighborhood. Plaintiffs have no absolute right to block the subway or the vent shafts, but they do have a right to be heard on the design and location of those facilities. This process "subjects officials to the differing views of competing interest groups and forces them to take account of prevailing views while the project plans are still being formulated." [23]

■■■ Defendant has contended that only general plans for the vent shafts were in existence at the time of the public hearing and that those general plans were available at the hearing. It is clear that the vent shafts locations were not discussed at the public hearing, that their proposed general location was not included in the "information kits" distributed to area residents, and that they were not noted on the large stage maps on display at the hearing. Defendant contends that diagrams showing the proposed general locations were among piles of maps and diagrams on large tables outside the hearing room.[24] The Court rejects any implication that this was adequate notice, especially in light of the fact that the Notice of Hearing affirmatively stated that "the location of these facilities cannot presently be determined." The same rationale applies to Metro's argument that Plaintiffs could have discovered more information about the shafts by investigating further at Metro offices. If the required public hearings are to be meaningful the burden must be on Metro to provide adequate notice concerning items which are likely to be the focus of interest on the part of persons affected.

■■■ Defendant's argument of laches is without merit. Aside from the affirmative representations at the hearing that vent shafts locations would not be determined until the Summer or Fall of

existence the hearing should have been delayed, or, alternatively, a two-stage hearing held. The Court notes that the *Bootery* decision specifically recommended (326 F.Supp. at 803 n. 25) the two-stage hearing procedure envisioned for construction of Federally funded highway projects, 23 C.F.R. Part 1, Appendix A (1972). Since the Court offered this only as "an excellent guideline", Metro was free to disregard the recommendation, albeit at the peril of just such litigation as is presently before the Court. This Court concurs in the *Bootery* recom-

mendation and urges its serious reconsideration by Metro.

22. 326 F.Supp. at 810.

23. D.C. Federation of Civic Associations v. Volpe, 140 U.S.App.D.C. 162, 434 F.2d 436, 442 (1970).

24. Plaintiff Dewey's affidavit indicates that crowds were milling about the tables throughout the hearing and that he sought to examine each of the items on the tables but was unable to do so because of the circumstances.

**462**

1972,[25] Plaintiff Saunders requested soon after the public hearing information and consultation as to vent shafts "when the very earliest staff planning is taking place."[26] Despite this Plaintiffs were not further advised until September, 1972, when they were informed that the vent shafts locations had been finally determined. Since that time Plaintiffs have vigorously pursued their interests and Metro has been on notice of their concern.

Once on notice of Plaintiffs' concern after their September, 1972, meeting, Metro did act in a seemingly bona fide manner to consider Plaintiffs' objections, including preparation of a formal study of alternative vent shafts locations and configurations. Yet private meetings with certain concerned citizens cannot suffice for a public hearing, for a solution offered by one party at a private meeting might be the cause of great consternation on the part of an interested party not present and unaware of the discussions. At least some of the present Plaintiffs were not among those privately consulted.

On consideration of the equitable factors involved, the Court finds little injury to Metro from the limited injunction which will issue, preventing construction of the vent shafts until the residents have been heard as to their design and location in the neighborhood. Metro will be allowed to continue its planning and begin construction on the other elements of the A–9 route, and on the contiguous A–6 route. The public interest clearly lies in complete and meaningful public participation in Metro's planning process. Plaintiffs would suffer irreparable injury in the removal of trees from their neighborhood and, perhaps more importantly, in the derogation of Metro's obligations under the law.[27]

Defendant will be directed to hold a public hearing on vent shafts location and design on the A–9a route segment, in accordance with the procedures outlined in paragraphs seven and eight of the *Bootery* decree.[28]

Appropriate Orders will be entered.

"Plaintiffs will suffer irreparable injury . . . in that they will be denied their right to meaningful, knowledgeable, and effective participation in the hearing process in a manner which comports with (law)."

cf. Keith v. Volpe, 4 E.R.C. 1562, 1565 (C.D.Cal.1972) ; Lathan v. Volpe, 455 F.2d 1111 (9th Cir. 1971).

25. Transcript at 108.

26. Plaintiffs' Exhibit 2: Letter from Joseph J. Saunders to Carleton R. Sickles, Chairman, W.M.A.T.A., Nov. 15, 1971.

27. See, e. g. McLean Gardens Residents Association, Inc. v. National Capital Planning Commission, 4 E.R.C. 1708 at 1713 (D.D.C.1972) :

