**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, ex rel. NORALCO CORPORATION**

v.

**NORAIR ENGINEERING CORPORA- TION and Employees Commercial Union Insurance Company, Appellants.**

No. 76–1094.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1976.

Decided April 6, 1977.

Paul W. Killian, Washington, D. C., for appellants.

John B. Tieder, Jr., Washington, D. C., also entered an appearance for appellants.

Charles M. Reifel, Washington, D. C., for appellee, Noralco Corp.

Before WRIGHT, McGOWAN and Mac-KINNON, Circuit Judges.

Opinion For The Court Per Curiam

PER CURIAM:

The Washington Metropolitan Area Transit Authority (WMATA) contracted with Norair Engineering Corporation (Norair) for construction in connection with a Metro subway line. Norair in turn subcontracted with Noralco Corporation for certain demolition work required by the prime contract. Norair posted a payment bond to ensure the payment of Noralco and other subcontractors.

A number of problems arose in the course of performance of Noralco's subcontract, as a result of which Noralco concluded that it was entitled to additional compensation from Norair. In Noralco's view, some of the claims called for additional compensation from WMATA, while others rested solely on the subcontract between Norair and Noralco.

The *prime* contract provided an administrative dispute-resolution process requiring submission of disputes first to the WMATA contracting officer and then to the Army Corps of Engineers Board of Contract Appeals. The subcontract, however, contained no express administrative disputes procedure. Nevertheless, a number of Noralco's demands were submitted to the contracting officer and several were resolved to Noralco's satisfaction. A number of Noralco's claims are still pending in the administrative process. At least two have never been submitted.

Notwithstanding the existence of the administrative procedure, on May 9, 1975, Noraclo filed a 21-count suit in diversity against Norair and its surety. As is customary in analogous Miller Act suits, the plaintiff was styled as WMATA for the use and benefit of Noralco.

Norair moved for dismissal and, in the alternative, for a stay of the judicial proceeding pending resolution of the administrative claims. The district court, in a one-page order filed November 24, 1975, denied both motions. Rehearing was denied on February 19, 1976. Appeal was noted only from denial of the stay. The narrow question thus presented for review is whether the district court correctly concluded that the prime contract disputes clause is inapplicable to the present disputes between prime and subcontractor.

Norair argues that various clauses of the subcontract incorporated by reference the terms of the prime contract, including its disputes clause. Clause one of the subcontract referred to the prime contract and stated that all work under the subcontract was to be performed

in accordance with the terms and provisions of said Contract including all Contract Documents forming a part of such Contract, and which are now made a part of the Subcontract Agreement insofar as they apply, and are hereby incorporated by reference.

In clause two the subcontractor certified that he had examined the prime contract and contract documents, and agreed that

[t]he Subcontractor and his Subcontractors will be and are bound by any and all parts of said documents insofar as they relate in any way or in any part to the work undertaken herein. . . .

The subcontract also stated:

19. It is understood and agreed by and between the parties hereto that the work included in this Subcontract is to be done under the direction of the Owner, and that its decisions or those of its designated representative as to the true construction and meaning of the plans and specifications shall be final.

If this contract is being performed under a prime contract with the United States Government, directions and decisions hereunder will be made by the Contracting Officer or his designated representative. The Subcontractor agrees to immediately perform all work directed to

be performed by the Contracting Officer or his designated representative. The Subcontractor agrees to be bound by any decision of the Contracting Officer affecting this subcontract. . . .

.    .    .    .    .

33. No suit or other action shall be brought by the Subcontractor against the Contractor's bond for monies due, but being withheld by reason of the terms of this Subcontract. The Contractor agrees to waive the statute of limitations for commencement of any suit brought under its bond for monies due but not payable under the Subcontract . . ..

J.A. 44–51. Norair contends that this language made Noralco's recourse to the prime contract disputes mechanism mandatory and a precondition to suit.

The district court apparently concluded that the language in the subcontract was insufficiently specific to incorporate by reference the prime contract's disputes clause. As the district court correctly held, this case is controlled by *John W. Johnson, Inc. v. Basic Construction Co.,* 139 U.S.App.D.C. 85, 95–97, 429 F.2d 764, 774–76 (1970). In that case this court, faced with a similar argument by a prime contractor, held that in the absence of "clear contractual language" it would not find that a subcontract had incorporated the prime contract disputes clause by reference. Similar conclusions have been reached by other circuits in cases involving federal contracts subject to the Miller Act, 40 U.S.C. §§ 270a–270b (1970). *See, e.g., H. W. Caldwell & Son, Inc. v. United States for use of John H. Moon & Sons, Inc.,* 407 F.2d 21, 23 (5th Cir. 1969); *United States for use of B's Co. v. Cleveland Elec. Co. of South Carolina,* 373 F.2d 585, 588 (4th Cir. 1967). But this is not a Miller Act case.

The payment bond in the Miller Act cases is posted as a result of a statutory provision. It is conceded in the present case that the bond was not in response to a specific statute, although the parties to the compact creating WMATA, the District of Columbia, State of Maryland and Commonwealth of Virginia, each have statutes imposing a bond requirement for public works contracts similar to that of the Miller Act. *See* D.C.Code § 1–804a (1973); Md. Real Property Code Ann. § 9–112 (1974), Va. Code § 11–23 (1973). Nevertheless, the policy considerations in each of these cases is the same. It is to be noted that the bond in *John W. Johnson, supra,* did not depend on a statute. The policy underlying both the statutes and the nonstatutory bonds is to protect subcontractors who may provide substantial amounts of labor or materials in connection with a prime contract for the construction of public facilities that are not subject to attachment and sale to satisfy the subcontractors' claims for payment. In the absence of express contractual language, it cannot be assumed that the subcontractor intended to forfeit or condition his right to recover on the bond. The speculative judicial economy that may result if the claims are satisfactorily resolved through the administrative process does not override this consideration.

In the light of this proper conclusion of law, we do not find the district court's reading of the contract to be in error. As Noralco argued below and the district court necessarily concluded, the quoted subcontract terms can most reasonably be read to incorporate the prime contract and require adherence to WMATA's directions only in matters relating to work specifications and performance. Clause one of the subcontract refers to the prime contract terms only "insofar as they apply." Clause two expressly incorporates the prime contract terms "insofar as they relate . . . to the work undertaken herein . . .." In clause 19 the subcontractor agrees to be bound by the owner's decisions on the "construction and meaning of the plans and specifications . . .."

Although Norair now appears to argue to the contrary, it was conceded below that the second paragraph of clause 19 was inapplicable by its terms to the Noralco-Norair subcontract since WMATA is not an agency of the United States Government. *See Saunders v. Washington Metropolitan Area Transit Authority,* 359 F.Supp. 457, 459–60

(D.D.C.), *remanded on other grounds,* 159 U.S.App.D.C. 55, 486 F.2d 1315 (1973). The first sentence in that paragraph is most reasonably read as limiting the entire paragraph. The district court also apparently rejected Norair's reliance below on clause 33, not pressed here. Clause 33 can reasonably be read in conjunction with the two clauses (31 and 32) preceding it to apply only to claims against sums retained by the prime contractor as a result of disputed contract performance by the subcontractor.

The case principally relied upon by Norair, *J. S. & H. Construction Co. v. Richmond County Hospital Authority,* 473 F.2d 212 (5th Cir. 1973), does not command a different result. *J. S. & H.* involved an arbitration clause, not an administrative disputes procedure. The Fifth Circuit expressly relied upon the congressional policies favoring arbitration expressed in the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1970). Moreover, the Fifth Circuit noted that the arbitration clause there in issue provided for pursuit of a claim by the subcontractor against the prime contractor, in contrast to the Miller Act cases where the administrative procedure provides only for claims against the government agency. The contract in our present case is a standard form United States government contract virtually identical to those used in cases subject to the Miller Act, and the prescribed administrative disputes procedure is the same. As under the Miller Act,

no means is provided for resolving Noralco's several claims against Norair that cannot be "passed through" to WMATA. Thus, neither of the considerations that led to the result in *J. S. & H.* is applicable here.

Norair also relies on an unpublished *per curiam* decision of the Fourth Circuit, *United States and/or Washington Metropolitan Area Transit Authority v. Maryland Casualty Co.,* 530 F.2d 971 (4th Cir. 1975), summarily reversing the denial of a stay pending completion of administrative dispute procedures under a WMATA contract. The Fourth Circuit did not reach the question of the extent to which a subcontractor was bound by the prime contract disputes clause, but instead held, without citation of authority, that for reasons of judicial economy the district court "should have" granted the requested stay. In the present case the district court concluded that the disputes clause did not bind the subcontractor, and we do not find that it abused its discretion in refusing the stay. To the extent that the *Maryland Casualty* decision may be to the contrary, we decline to follow it.

*Affirmed.*