# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 23-7109**

**September Term, 2024**

FILED ON: NOVEMBER 13, 2024

ELISABETH REGINA MARIA GABRIELE VON PEZOLD, ET AL.,
APPELLEES

v.

REPUBLIC OF ZIMBABWE,
APPELLANT

---

Consolidated with 23-7110

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:21-cv-02004)

---

Before: WILKINS and GARCIA, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is

ORDERED and ADJUDGED that the judgment of the United States District Court for the District of Columbia be AFFIRMED.

\* \* \*

The present case arises from an extensive dispute over land in what is now The Republic of Zimbabwe ("Zimbabwe"). Petitioners-Appellees are Elisabeth Regina Maria Gabriele von Pezold (in her personal capacity and as executrix of her deceased husband's estate) and various

1

heirs and assigns (hereinafter referred to as the "von Pezolds"), and Border Timbers Limited and Hangani Development Company (Private) Limited (hereinafter referred to as "Border Companies"). After submitting their land disputes to arbitration under the International Centre for the Settlement of Investment Disputes ("ICSID") Convention, the von Pezolds and Border Companies received separate arbitration awards in their favor from an ICSID arbitration tribunal in the amounts of $195,001,163 and $124,041,223, respectively, plus interest, cost, and expenses.

After Zimbabwe unsuccessfully attempted to annul the arbitration awards, the von Pezolds and Border Companies each petitioned to enforce the arbitral awards in the United States District Court for the District of Columbia.

Zimbabwe filed motions to dismiss the petitions in the District Court arguing, *inter alia*, that the District Court did not have subject matter jurisdiction to enforce the arbitral awards because of Zimbabwe's sovereign immunity. Deciding the cases in the same Memorandum Opinion, the District Court denied Zimbabwe's motions to dismiss the petitions finding, *inter alia*, that Zimbabwe waived its sovereign immunity under both the implicit waiver exception and arbitration exception to the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. §§ 1605(a)(1), 1605(a)(6). Zimbabwe seeks interlocutory review based on the collateral order doctrine. *Id.* § 1292.

We affirm the District Court in finding that Zimbabwe waived its sovereign immunity under the arbitration exception, but decline to address whether the implied waiver exception applies.

## I.

## A.

Subject to certain exceptions, Congress provided that foreign states are immune from the jurisdiction of the courts of the United States. 28 U.S.C. §§ 1604, 1605, 1607; *see Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *Samantar v. Yousuf*, 560 U.S. 305, 313–14 (2010). There are two exceptions relevant to this case that can deem a sovereign's immunity null—the arbitration exception under 28 U.S.C. § 1605(a)(6), and the waiver exception under 28 U.S.C. § 1605(a)(1). The arbitration exception provides that a foreign state shall not be immune from the jurisdiction of federal and state courts of the U.S. in any case:

> in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6).

The "treaty or other international agreement" relevant to this case is the ICSID Convention,

"a multilateral convention designed to promote international investment." *Valores Mundiales, S.L. v. Bol. Republic of Venez., Ministerio del Poder Popular Para Relaciones Exteriores*, 87 F.4th 510, 513 (D.C. Cir. 2023); *see* ICSID Convention art. 25. The ICSID Convention's purpose is to provide facilities for arbitration of investment disputes between contracting states to the Convention at the Convention Centre, located at the World Bank in Washington, D.C. ICSID Convention arts. 1–2. Zimbabwe, Germany, Switzerland, and the United States are all Signatory and Contracting States to the ICSID Convention.

After an arbitration tribunal issues a decision and award, a party bound by the award can request an annulment of the award for various reasons listed in ICSID Convention Article 52. If an arbitral award is not annulled, then the parties are bound and the award can be enforced by any contracting state to the ICSID Convention with a federal constitution. ICSID Convention arts. 53–54. Each contracting state is mandated to treat the arbitral award as if it were a final judgment of a court in the state or its constituent states. ICSID Convention art. 54(1).

Accordingly, Congress gave effect to the United States' obligations under the ICSID Convention with the enactment of 22 U.S.C. § 1650a. *See Medellín v. Texas*, 552 U.S. 491, 521–22 (2008). The district courts have exclusive jurisdiction over ICSID award enforcement. 22 U.S.C. § 1650a(b). Under Section 1650a, an ICSID Convention award is given the same full faith and credit as if the award were a final judgement of a court of general jurisdiction. *Id.* § 1650a(a).

### B.

Zimbabwe contends that the District Court misapplied the arbitration exception in denying its motions to dismiss. We review the District Court's denial of Zimbabwe's motions to dismiss *de novo* pursuant to 28 U.S.C. § 1292. *See, e.g.*, *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 774 (D.C. Cir. 2022); *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126–27 (D.C. Cir. 2004).

To establish jurisdiction under the arbitration exception, a party must show: (1) an arbitration agreement; (2) an arbitration award; and, (3) a treaty governing award enforcement. *Zhongshan Fucheng Indus. Inv. Co. Ltd v. Fed. Republic of Nigeria*, 112 F.4th 1054, 1058 (D.C. Cir. 2024); *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024). Note that we have an independent obligation to assess our jurisdiction even as to elements that the parties do not dispute. *See Am. Rivers v. Fed. Energy Regul. Comm'n*, 895 F.3d 32, 40 (D.C. Cir. 2018); *High Plains Wireless, L.P. v. Fed. Commc'ns Comm'n*, 276 F.3d 599, 605 (D.C. Cir. 2002).

We find these undisputed elements satisfied: (1) the German Bilateral Agreement (the "German BIT") and the Swiss Bilateral Agreement (the "Swiss BIT") are the arbitration agreements; (2) the ICSID arbitration tribunal issued valid arbitration awards; and, (3) the ICSID Convention is the treaty governing the arbitration awards.

The only issue in dispute is whether the German BIT and Swiss BIT provide forum selection clauses or choice-of-law clauses for enforcement of the arbitral awards. Zimbabwe contends that it "issued a unilateral offer to arbitrate investment disputes with foreign investors from Germany and [Switzerland] with the condition that an award from such arbitration will only be enforced in Zimbabwe." Appellant Br. 22.

Interpretation of a treaty begins with the plain meaning of the language. *See Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 862 (D.C. Cir. 2015). If the text is unambiguous, our inquiry ends there. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

We address the Swiss BIT first to determine whether it contains an exclusive forum selection clause for enforcing arbitral awards. The Swiss BIT unambiguously states: "[t]he arbitral award shall be final and binding for the parties involved in the dispute and shall be enforceable in accordance with the laws of the Contracting Party in which the investment in question is located." Swiss BIT art. 10(6). Zimbabwe conceded that this provision was a choice-of-law clause, and we don't deny that. Appellant Br. 24; J.A. 1741; Oral Arg. 4:25–4:37. Here, Zimbabwe agreed to arbitrate under the ICSID Convention which specifically provides that "each Contracting State shall recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention art. 54. U.S. courts routinely apply foreign laws, and we see no reason why the District Court cannot apply Zimbabwean law here. *See, e.g.*, *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 843 (D.C. Cir. 2009) (finding that French law applied to the plaintiff's claims); *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 769 (D.C. Cir. 1992) (holding that Italian law applied as provided in the contract); *Wye Oak Tech., Inc. v. Republic of Iraq*, 557 F.Supp.3d 65, 81 (D.D.C. Aug. 17, 2021) (district court applying Iraqi law).

Now to the German BIT. The German BIT provides in Article 11(3) that arbitral awards issued by an ICSID tribunal "shall be binding on the parties" and "enforced in accordance with the domestic law of the Contracting Party in the territory of which the investment in question is situated." Zimbabwe argues that the District Court's interpretation finding that the clause is a choice-of-law clause made the language superfluous. Zimbabwe asks us to interpret the phrase "enforced in accordance with the domestic law" to mean that the award shall be enforced in accordance with Zimbabwean law; and, "in the territory of which the investment in question is situated" to mean that the enforcement must occur in Zimbabwe. The District Court reasoned that Zimbabwe's reading was illogical, and we agree.

Article 11 of the German BIT provides the process that the contracting parties will use to settle investment disputes between a contracting party and an investor of the other contracting party. The article contains four separate paragraphs. Of note, Articles 11(2) and 11(3) contain the same clause in question. Specifically, Article 11(2) states that the arbitral tribunal "shall reach its decisions on the basis of [the BIT], any treaties in force between the Contracting Parties," rules of international law, "*and the domestic law of the Contracting Party in the territory of which the investment in question is situated*." German BIT art. 11(2) (emphasis

4

added).  Zimbabwe contests that Article 11(2) instructs the arbitral tribunal on how to deal with a broader set of substantive issues but agrees that the clause in question at the end is a choice-of-law clause.  Oral Arg. 5:45–8:18.  However, Zimbabwe asks us to read the same clause in Article 11(3) as a venue selection clause because 11(3) deals only with the enforcement of the arbitral awards.  *Id.*  Because Zimbabwe offers no compelling reason to depart from the "cardinal principle of contract construction that" when a phrase is used in multiple places in a single instrument, the phrase should be read consistently, we decline to read the treaty in the way Zimbabwe urges.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995); *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 877 (D.C. Cir. 2019); Restatement (Second) of Contracts § 202 (Am. L. Inst. 1981).  Articles 11(2) and 11(3) of the German BIT should be read consistently since they each contain the same clause.  Therefore, it follows that if the end of Article 11(2) is a choice-of-law clause then the same phrase at the end of Article 11(3) is also a choice-of-law clause.  Here, "the investment in question" is land in Zimbabwe.  Thus, it follows that the law to be applied to the enforcement proceedings held in the District Court is Zimbabwean law.[1]

## C.

Because the arbitration exception under the FSIA is satisfied, we decline to address whether the implicit waiver exception applies.  *See NextEra*, 112 F.4th at 1100.

\*     \*     \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk

---

[1] The von Pezolds also raise arguments regarding judicial estoppel and the "most favored nations" provisions in the treaties.  Because we need not reach these arguments to decide this case, we decline to do so.