25 F.3d 1057
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 KANSAS STATE BANK & TRUST, as Conservator of the Estate of
ABC, a minor, Plaintiff-Appellant,
v.
MIDWEST MUTUAL INSURANCE COMPANY and Preferred Risk Mutual
Insurance Company, Defendants-Appellees.
 No. 93-3066.
 United States Court of Appeals,
Tenth Circuit.
 May 13, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before LOGAN and MCKAY, Circuit Judges, and SAM, District Judge.[2]
 
 
 2
 Plaintiff Kansas State Bank & Trust (KSB) appeals from an adverse summary judgment order. KSB brought a declaratory judgment action to determine the available coverage under commercial general liability and commercial umbrella liability policies issued by defendants Midwest Mutual Insurance Company (MMI) and Preferred Risk Mutual Insurance Company (PRM) respectively[3] insuring Holy Cross Evangelical Lutheran Church and School, as well as their officers and management (HCELC).
 
 
 3
 This litigation followed settlement of a state tort action in which KSB, the appointed conservator for ABC,[4] claimed that a teacher at the HCELC school had sexually molested ABC from 1990-91, and that the school principal and senior pastor (HCELC and school officials) were negligent from 1988-91 in failing to report or otherwise prevent this alleged misconduct. That state court action was filed approximately five months after the teacher was arrested for taking indecent liberties with ABC. The liability issue in that state litigation was settled but the extent of available insurance coverage was not resolved. Defendants acknowledged that plaintiff was entitled to $100,000 under the general liability policy, but plaintiff argued that ABC was entitled to up to $500,000 under the policies. Therefore, the settlement agreement contained the stipulation that in litigating the issue of the available coverage under defendants' policies, the contentions contained in plaintiff's state court petition, proposed amended petition, and interrogatory answers would be accepted as true.
 
 
 4
 The specific coverage issues are whether the district court correctly determined (1)that the sexual misconduct exclusion in the general liability policy limits KSB's recovery to that provided in the sexual misconduct liability coverage form, and (2)that KSB only established liability during a single policy period. We review de novo orders granting summary judgment. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990).
 
 
 5
 The first issue concerns the available coverage for alleged sexual misconduct. The district court reviewed the coverage carried by HCELC and concluded that the primary coverage carried by MMI and umbrella coverage carried by PRM contained the same basic coverage and exclusions.
 
 
 6
 This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence."
 
 
 7
 Appellant's App. 95, 131. Pertinent to the coverage analysis the policies provide an exclusion for
 
 
 8
 Any personal injury, bodily injury and mental or emotional pain or anguish, sustained by any person arising out of or resulting from any actual or alleged act of sexual misconduct of any kind. The Company shall have no duty to investigate, settle, defend or pay any claim or suit asserting any act of sexual misconduct or any breach of duty contributing to such act.
 
 
 9
 Id. at 98, 135. The basic general liability coverage, therefore, did not provide coverage for the claims of negligence against HCELC and school officials.
 
 
 10
 But the MMI policy also included a sexual misconduct coverage form that stated in part:
 
 
 11
 We agree to cover your legal liability for damages because of bodily injury, excluding any sickness or disease, to any person arising out of sexual misconduct which occurs during the policy period.... All acts of sexual misconduct by one person, or two or more persons acting together, or any breach of duty causing or contributing to such acts will be considered one occurrence in determining our liability under this section.
 
 
 12
 Id. at 89. That coverage form limited liability to $100,000 for each occurrence, and $300,000 for each policy period. Id. at 78. The provision specifically excluded coverage for anyone who "personally participated in, directed, or knowingly allowed any act of sexual misconduct." Id. at 89. Therefore, the sexual misconduct coverage form insured the derivative negligence claims against the HCELC school, but not the teacher's actual acts of misconduct.
 
 
 13
 Plaintiff makes two alternative arguments. One is that coverage of up to $300,000 exists ($100,000 for each of the three policy periods involved). The other is that $500,000 in coverage exists because the negligence of the HCELC and school officials was a separate "occurrence" from the teacher's misconduct and therefore not subject to the $100,000 per occurrence per policy period ceiling contained in the sexual misconduct coverage form.
 
 
 14
 The district court considered the language of the sexual misconduct coverage form, along with the policy limits, in determining what coverage existed for plaintiff's allegations of negligence against the HCELC and school officials. The district court held that unless the alleged negligence by the HCELC and school officials is shown to have been independent of the teacher's misconduct those derivative claims are part of the same occurrence as the teacher's misconduct. The district court further refined the analysis by concluding that because the endorsement schedules and the general liability and sexual misconduct liability forms provide coverage for specific one-year "policy periods," all acts of misconduct by a single person during a policy period constitute a single occurrence subject to the $100,000 single occurrence policy limit. Because the alleged negligent acts of the HCELC and school officials "contributed" to, and were not independent of, the teacher's misconduct, their acts together are subject to the $100,000 maximum per occurrence per policy period recovery limit. Thus, plaintiff's maximum recovery was $100,000 for each of the three policy periods possibly at issue, i.e., November 1988 to November 1989, November 1989 to November 1990, and November 1990 to November 1991. Id. at 505-06.
 
 
 15
 The second issue is whether coverage was available for more than one policy year. The district court determined that coverage under the sexual misconduct coverage form was only available for the 1990-91 policy year. The stipulated documents in the state court case contained specific allegations of sexual misconduct only in 1990-91. Id. at 40-45. Those documents also contained the explicit admission by ABC that she was unable to identify specific dates or incidents of misconduct. Id. at 50, 57, 69. The record supports the conclusion that at least one act of misconduct occurred in February 1991, but is silent as to when in 1990 any acts of misconduct occurred. Under Kansas law, the plaintiff bears the burden of proving ABC suffered an injury for which the defendant's policies provided coverage. Clark Equip. Co. v. Hartford Accident and Indem. Co., 608 P.2d 903, 906 (Kan.1980). We agree with the district court that the record contains no evidence of a specific act of sexual misconduct in 1990, during either the 1990-91 or the 1989-90 coverage period (under which circumstance plaintiff would be entitled to an additional $100,000 recovery).
 
 
 16
 We also agree with the district court's conclusion that the expanded allegations of sexual molestation contained in the petition for declaratory judgment filed after the settlement and argued in plaintiff's motion for summary judgment, were not part of the stipulations made at the time the state court case was settled. Therefore, the district court correctly limited its analysis of the available coverage to plaintiff's assertions of sexual misconduct during 1990-91, without regard to the expanded allegations contained in the declaratory judgment suit.
 
 
 17
 We have considered the arguments in plaintiff's brief and examined those portions of the trial transcript submitted to the court by the parties. We agree with the district court that the language of the insurance policies is unambiguous, and that the policy has been properly enforced according to the plain and ordinary meaning of the policy language. See Dronge v. Monarch Ins. Co., 511 F.Supp. 1, 4 (D. Kan.1979). After this review we are satisfied that the findings of fact are supported by the record, and that the district court correctly applied the law. We therefore AFFIRM the district court's entry of summary judgment for substantially the reasons stated in its orders of November 17, 1992, and February 2, 1993. Defendants' motion to strike plaintiff's supplemental appendix is denied.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable David Sam, United States District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [3]
 MMI and PRM are apparently members of the same family of insurance companies which provided mutual coverage to the insured, Holy Cross Evangelical Lutheran Church
 
 
 [4]
 We grant KSB's motion to seal the court file and refer to the conservatee as ABC