**PREFERRED RISK MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Traci Louise WATSON, Individually and as Next Friend for Aaron Watson, a Minor Child; Jami Manning and Mark W. Manning, Individually and as Next Friend for Alex Manning, a Minor Child; Nathan Bryan, Individually and as Next Friend for Jerry Matthew Bryan, a Minor Child; and Grace Temple Baptist Church d/b/a Grace Temple Child Development Center, Appellees.**

No. 2–95–188–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 9, 1997.

Rehearing Overruled Feb. 13, 1997.

E.J. Wohlt, Jr., Houston, for Appellant.

J. Jeffrey Springer, R. William Wood, Wood, Springer & Lyle, P.C., C. Jane Thacker, Denton, for Appellees.

Before CAYCE, C.J., and LIVINGSTON and BRIGHAM, JJ.

**OPINION ON REHEARING**

CAYCE, Chief Justice.

Appellant's motion for rehearing is granted. Our opinion and judgment of August 30, 1996 are withdrawn, and the following substituted therefor.

Three children were allegedly molested by an employee of Grace Temple Baptist Church's day care center, prompting two separate lawsuits filed by the children and their parents. Grace Temple and its insurance carrier, appellant Preferred Risk Mutual Insurance Company, entered into a settlement agreement with the children that provided for a lump sum payment by Preferred of $100,000 to be allocated among the children on a pro rata basis. The settle-

ment also provided for the deposit of another $100,000 in escrow pending the outcome of a declaratory judgment action filed by Preferred to determine the proper definition of "occurrence" in the sexual misconduct liability coverage endorsement to Grace Temple's general liability policy. The sexual misconduct endorsement has a limitation of $100,000 per "occurrence"[1] and a $300,000 limit per policy period for claims involving sexual misconduct. Preferred took the position that the children's claims collectively constitute only a single "occurrence." The children countersued alleging that each child's claim constitutes a separate "occurrence." The case proceeded to trial on an agreed statement of facts on March 16, 1995. On May 12, the trial court rendered judgment for the children and against Preferred. Preferred then perfected this appeal.

In three points of error, Preferred contends that the trial court erred in declaring that the policy provided a separate $100,000 "occurrence" limit for each child allegedly molested by the Grace Temple employee. Preferred argues that all of the employee's alleged acts of sexual misconduct, or Grace Temple's alleged breaches of duty contributing to those acts, collectively constitute a single "occurrence."

The Commercial General Liability ("CGL") policy in this case specifically excluded "bodily injury" and "personal injury" caused by abuse or molestation under a policy endorsement entitled "Abuse or Molestation Exclusion." The policy, however, included another endorsement entitled "Sexual Misconduct Liability Coverage Form." This endorsement provides, in pertinent part, as follows:

## 1. INSURING AGREEMENT

We agree to cover your legal liability for damages because of bodily injury ... *to any person* arising out of sexual misconduct which occurs during the policy period. . . .

. . . .

## 2. LIMITS OF LIABILITY

Our obligation to pay damages for each *occurrence* is the Each Occurrence limit shown on the Endorsement Schedules in the Declarations [$100,000 each occurrence/$300,000 total damages during policy period]. Our total obligation for damages covered by this Coverage Form during any policy period is the Total Damages During Policy Period limit shown on the Endorsement Schedules in the Declarations regardless of the number of claims or occurrences, or number of insureds.

*All acts of sexual misconduct by one person, or two or more persons acting together, or any breach of duty causing or contributing to such acts will be considered one occurrence in determining our liability under this section.* [Emphasis supplied.]

Neither party has argued that the definition of "occurrence" contained in the sexual misconduct endorsement is ambiguous.

The interpretation of insurance contracts is governed by the same rules of construction applicable to other contracts. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex. 1994). When construing a contract, courts must strive to give effect to the written expressions of the party's intent. *Id.* To do so, they must read all parts of the contract together, giving controlling effect to specific provisions over general provisions. *Id.* at 133–34. If an insurance contract is worded so that it can be given only one reasonable construction, it will be enforced as written. *National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). However, if its terms are susceptible to more than one reasonable interpretation, the uncertainty must be resolved by adopting the construction that favors the insured. *Id.* This is true even if the construction urged by the insurer is more reasonable or is a more accurate reflection of the parties' intent. *Id.*

---

1. An "occurrence"-based policy caps the limits of coverage on a per occurrence basis. Under such a policy, it is the date of the occurrence, and not the date of the claim, that determines coverage. When bodily injury results from an occurrence during a policy period, coverage is triggered. This coverage extends to all resulting damages, both present and future, emanating from the injury. The policy does not, however, cover bodily injury occurring outside the policy period.

Applying these rules of construction to this case, we find that the definition of "occurrence" in the sexual misconduct endorsement clearly and unambiguously means that a single "occurrence" is "[a]ll acts" of sexual molestation by either "*one* person, or two or more persons acting together, or any breach of duty causing or contributing to such acts." [Emphasis supplied.] This is the only reasonable construction that can be given to the endorsement; therefore, we must enforce it as it is written. In so doing, we hold that "all" of the Grace Temple employee's alleged acts of sexual misconduct and "any" alleged breach of duty that may have contributed to those acts, collectively constitute a *single* "occurrence" under the policy in question.

Appellees argue that each child is entitled to a separate "occurrence" limit and urge that we follow the Fifth Circuit's reasoning in *Society of Roman Catholic Church v. Interstate Fire & Casualty Co.*, 26 F.3d 1359 (5th Cir.1994). In that case, two pedophilic priests molested thirty-one children over a period of seven years. Preferred was one of two primary carriers for the diocese. All of the diocese's insurance policies were "occurrence"-based policies. After settling the molestation claims, the diocese filed a declaratory judgment action for determination of whether Preferred's and the other insurer's general liability policies defined "occurrence" on a per child basis. Upon concluding that the definition of "occurrence" contained in the policies was "malleable" and "uncertain" (and thus subject to more than one interpretation), the Fifth Circuit interpreted the policy in favor of the insured holding that the molestation of each child is a separate "occurrence." *Id.* at 1364–65.

*Society* is inapposite to this case. The court in *Society* construed a general liability policy that did not exclude sexual misconduct and that contained an entirely different definition of "occurrence" than the one at issue here. The policy in *Society* defined "occurrence" as:

[A]n accident or a happening or event or *a continuous or repeated exposure to conditions* which unexpectedly and unintentionally result in personal injury, or damage to property during the policy period. All such exposure to *substantially the same general conditions* existing at or emanating from one location shall be deemed one occurrence.

*Id.* at 1363–64. This definition is similar to the definition of "occurrence" contained in the CGL policy in this case, which defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." However, unlike the policy in *Society*, the CGL policy expressly excludes sexual misconduct claims from its coverage and, therefore, from the application of the CGL terms to those claims. Instead, the policy includes a "sexual misconduct" endorsement to cover those claims. This endorsement contains a distinct definition of "occurrence" that both parties agree is clear and unambiguous.

Because sexual misconduct claims are specifically excluded from the CGL policy, we find no conflict between the endorsement's definition of "occurrence" and the CGL policy's definition of "occurrence." Consequently, in order to give effect to the specific definition of "occurrence" in the sexual misconduct endorsement, we must construe it according to the written intention of the parties, i.e. "all" alleged acts of sexual misconduct and "any" breach of duty contributing to such acts constitute a *single* "occurrence."[2] Any other interpretation would render the endorsement's definition of "occurrence" meaningless.

We sustain Preferred's points of error and reverse and render judgment that appellees take nothing.

---

**2.** In its supplemental brief, Preferred cites and discusses the *unpublished* decision of the Tenth Circuit Court of Appeals, *Kansas State Bank & Trust v. Midwest Mut. Ins. Co.*, 1994 WL 192035 (10th Cir.1994). In *Kansas State Bank & Trust*, the court construed a similar endorsement and policy scheme and affirmed the district court's judgment limiting coverage for the injuries suf-

fered by a *single* child to the $100,000 "occurrence" limit. *Id.* at *2–3. The court, however, did not address the question here—whether *two or more* molested children are entitled to a separate "occurrence" limit. In any event, we remind counsel that unpublished decisions shall not be cited as authority by the court *or by counsel.* TEX. R. APP. P. 90(i).