# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 23, 2007 　　　　Decided January 4, 2008

No. 06-7163

ESSEX INSURANCE COMPANY,
APPELLEE

v.

JOHN DOE, A MINOR, THROUGH HIS NEXT FRIEND, BOB DOE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01460)

*Mark A. Packman* argued the cause for appellant.  With him on the briefs was *Alyson A. Foster*.

*Sean M. Hanifin* argued the cause and filed the brief for appellee.  *Carmen R. Kelley* entered an appearance for appellee.

Before: ROGERS, TATEL and KAVANAUGH, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: This insurance coverage case arises out of very disturbing events at a children's residential facility in Washington, D.C., operated by Associates for Renewal in Education, Inc., known as A.R.E. At age 7, while residing in the A.R.E. facility, John Doe was sexually assaulted on four occasions by four different older boys who lived at the home. Through his father, Doe filed suit against A.R.E. and alleged that A.R.E. had not properly supervised the facility. Doe and A.R.E. ultimately settled. As part of the settlement, A.R.E. assigned Doe its rights under a liability policy issued to A.R.E. by Essex Insurance Company. Invoking the federal district court's diversity jurisdiction, Essex filed a declaratory judgment action to determine its responsibility under the insurance contract.

The contract issued by Essex to A.R.E. provides that A.R.E.'s annual liability coverage is subject to a "general aggregate limit" of $2 million per year and an "each occurrence limit" of $1 million. Joint Appendix ("J.A.") 48. A sublimit endorsement to the contract gives A.R.E. liability coverage for sexual abuse claims alleging negligent supervision; that coverage is subject to an "aggregate limit" of $300,000 per year and an "each claim limit" of $100,000. J.A. 65. The sublimit endorsement states: "The sublimit of liability shown in this endorsement is the most [Essex] will pay for all damages including investigation and defense because of injury arising out of any one claim for sexual abuse and/or misconduct. The aggregate limit stated in this endorsement is the most [Essex] will pay for all claims,

including investigation and defense, arising out of sexual abuse and/or misconduct in any 'policy year.'" J.A. 65.

The contract defines the term "occurrence" to mean "an accident," and it is not disputed that there were four occurrences in this case – one occurrence for each time Doe was assaulted. *See* J.A. 76; Tr. of Oral Arg. at 17. But the contract does not define the relevant term "claim" for purposes of the $100,000 "each claim" limit in the sublimit endorsement. The absence of a definition for the term "claim" raises the central question in this case: Is there one claim, or are there four claims, when a sexual abuse victim makes a single demand for compensation from A.R.E. for four occurrences?

Essex argues that Doe has only one "claim" for the four occurrences because Doe submitted one demand for compensation. Essex contends that it therefore must pay only $100,000. Doe, who has been assigned A.R.E.'s rights under the liability insurance contract, argues that he has four "claims" because he was sexually assaulted on four different occasions; he says the four occurrences trigger four claims. Doe contends that he is therefore entitled to $300,000, which is the policy's aggregate annual limit for sexual abuse claims against A.R.E.

Essex separately argues that the coverage limit – whether $100,000 or $300,000 – must be reduced by the amount Essex spent on investigation and defense of Doe's case against A.R.E. Doe disagrees.

The District Court agreed with Essex on both issues. We exercise de novo review of these questions of contract interpretation under D.C. law.

4

I

Doe's argument that he has four claims for the four occurrences finds support in the admittedly sparse body of relevant precedent. For example, the D.C. Court of Appeals has interpreted the term "claim" in an insurance contract, when not otherwise defined, to mean a "cause of action." *Zhou v. Jennifer Mall Rest., Inc.*, 699 A.2d 348, 353 (D.C. 1997). A cause of action is a "group of operative facts giving rise to one or more bases for suing" – a definition favoring Doe because there were four separate tortious incidents in this case. BLACK'S LAW DICTIONARY 214 (7th ed. 1999). Moreover, some courts have held that separate tortious acts give rise to multiple "claims" under an insurance policy. *See, e.g.*, *Colbert County Hosp. Bd. v. Bellefonte Ins. Co.*, 725 F.2d 651, 653-54 (11th Cir. 1984); *Shelter Am. Corp. v. Ohio Cas. & Ins. Co.*, 745 P.2d 843, 846 (Utah Ct. App. 1987). By contrast, when pressed at oral argument, Essex could not identify a single insurance case in which a court interpreted the word "claim" to cover multiple torts by several individuals over a period of time. *See* Tr. of Oral Arg. at 16.

Doe's argument that he has four claims also finds support in the text of the contract. The contract tethers the term "claim" to the term "occurrence" and appears to establish a one-to-one relationship between (i) an occurrence causing injury to a third party and (ii) that third party's ensuing claim against A.R.E. For example, the policy sets a deductible of $500 "per claim" and then states that "[t]he deductible amount" applies to "all damages sustained by one person, or organization, as the result of any one occurrence." J.A. 59. The contract further provides that Essex "may at [its] discretion investigate any 'occurrence' and settle any claim or 'suit' that may result." J.A. 67. Additionally, the contract's sublimit endorsement appears to use the phrase "each claim

limit" interchangeably with the phrase "each occurrence limit," at least in the context of a single victim.[1] The contract language thus appears to establish a direct relationship between an occurrence and a claim when there is a single injured victim: A sexual abuse claimant has multiple claims when he or she suffered injuries caused by multiple occurrences, and has one claim when he or she suffered injury caused by one occurrence.[2]

Essex counters that the term "claim" means the actual demand for money by the third-party claimant against A.R.E., regardless of how many occurrences the claimant alleges in the demand. But even apart from the contract's linkage of claims and occurrences described above, Essex's interpretation is illogical. First of all, it seems highly unlikely that a rational insurer or rational insured party would allow insurance liability coverage – in a situation where a single third party suffers injuries caused by multiple occurrences – to vary dramatically based *solely* on whether the injured third party happens to make (i) one summary demand against the insured A.R.E. or (ii) multiple demands against the insured A.R.E. Moreover, contrary to the logical implication of Essex's argument, in a case with one sexual assault occurrence and one victim, A.R.E. obviously could not seek coverage from Essex for multiple claims simply because the victim sent multiple demand letters to A.R.E. For those reasons, we are not persuaded by Essex's argument that the number of claims depends on the number of demand letters sent by the victim rather than on the number of occurrences.

---

[1] The sublimit endorsement for sexual abuse cross-references what it refers to as the $1 million "each claim limit" of the general policy. J.A. 65. In fact, the general policy has an "each occurrence limit," not an "each claim limit." J.A. 48.

[2] If there is more than one victim, then the number of claims may of course exceed the number of occurrences.

In resolving this contract interpretation question, we also bear in mind that insurers such as Essex are well aware how to limit their coverage for sexual abuse claims made against an insured. A contract may define negligence with respect to multiple instances of sexual abuse as a single occurrence. Or a contract for this kind of claim may establish an each-injured-party limit or an each-perpetrator limit, or both. *See generally TIG Ins. Co. v. Merryland Childcare & Dev. Ctr., Inc.*, 2007 WL 316571, at *2-3 (W.D. Tenn. 2007); *Preferred Risk Mut. Ins. Co. v. Watson*, 937 S.W.2d 148, 149 (Tex. App. 1997). In this case, for example, Essex's argument would be persuasive if its contract with A.R.E. established a $100,000 "each-injured-party limit" for coverage of sexual abuse claims. But the contract here contains no such limiting language.[3]

This contract, read as a whole, unambiguously supports Doe's position that the number of claims for an individual sexual abuse victim depends on the number of occurrences. Even if the contract here were ambiguous, moreover, Doe still would prevail because D.C. law requires that we construe such ambiguity against the insurer Essex. *See, e.g.*, *Revere Copper & Brass Inc. v. Overseas Private Inv. Corp.*, 628 F.2d 81, 82-83 (D.C. Cir. 1980); *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1127 (D.C. 2001); *Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 986 (D.C. 2001); HOLMES'S APPLEMAN ON INSURANCE, 2D § 6.1, at 134 (1996); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 206 (1981). In sum, we hold that

---

[3] Essex's brief has not attempted to construct an argument based on the nature of the underlying alleged tort – negligent supervision – in order to suggest that there was only one occurrence. *Cf. Lee v. Interstate Fire & Cas. Co.*, 86 F.3d 101 (7th Cir. 1996). Rather, Essex has argued that the number of occurrences (four) under this contract does not necessarily equal the number of claims.

Doe is entitled to receive payment from Essex of up to $300,000 – the aggregate annual limit of the policy for sexual abuse claims.[4]

## II

We also must consider a second issue: whether Essex may reduce the $300,000 it owes to Doe by the amount it spent on investigating and defending Doe's suit against A.R.E.

The policy states: "The sublimit of liability shown in this endorsement is the most we will pay *for all damages including investigation and defense* because of injury arising out of any one claim for sexual abuse and/or misconduct." J.A. 65 (emphasis added). The policy further provides that the "aggregate limit stated in this endorsement is the most we will pay for *all claims, including investigation and defense*, arising out of sexual abuse and/or misconduct." J.A. 65 (emphasis added).

Essex contends that the contract allows it to subtract the costs of investigating and defending a claim from its coverage limits – a so-called defense-within-limits policy. Challenging Essex's interpretation, Doe points to the phrase "pay for all damages including investigation and defense" in the contract and argues – based entirely on the words "damages including" – that the investigation and defense costs referenced here are the *third-party claimant's* investigation and defense costs (which Doe says could be included in the claimant's

---

[4] We emphasize that our analysis here is limited to the precise language of this contract when read as a whole. We also stress that it is undisputed that there were multiple "occurrences" as "occurrence" is defined by this contract. Finally, we underscore that this case involves only one injured victim.

"damages"), not *Essex's* investigation and defense costs. But Doe's argument makes little sense in the context of this contract: How could the damages paid by A.R.E. to a third party who has sued A.R.E. because of sexual abuse ever include something known as "*defense*" costs? In other words, what *defense* costs does the sexual abuse victim incur? Doe has no good – or even plausible – answer to this question.

The defense-within-limits language certainly could have been clearer. For example, the contract could have substituted the word "and" for "including." Or the parties could have inserted the phrase "including investigation and defense" after the phrase "most we will pay." Either of those alternatives would have been more precise. But the fact that the language could have been clearer or grammatically improved does not mean we can read the phrase "including investigation and defense costs" entirely out of the contract – as Doe's position would require, in contravention of black-letter contract principles. *See Caglioti v. District Hosp. Partners*, 933 A.2d 800, 811 (D.C. 2007); *1010 Potomac Assocs. v. Grocery Mfrs. of Am.*, 485 A.2d 199, 205 (D.C. 1984); RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981). We thus agree with the District Court that the defense-within-limits provision means that Essex may reduce its coverage by the amount Essex spent on investigation and defense.[5]

---

[5] In this case, Essex directly incurred investigation and defense costs, as opposed to reimbursing A.R.E. for A.R.E.'s investigation and defense costs. Doe has not attempted to argue that investigation and defense costs are subtracted only if they were reimbursed by Essex to A.R.E. as opposed to incurred by Essex directly.

\* \* \*

We affirm in part and reverse in part the judgment of the District Court.   Doe is entitled to recover from Essex $300,000 minus the investigation and defense costs that Essex incurred with respect to Doe's case against A.R.E.[6]

*So ordered.*

---

[6] Although we do not decide the question, the contract by its terms appears to entitle Essex to subtract only the costs it incurred in investigating and defending Doe's case against ARE *before* that case was settled in June 2005.