**BODE & GRENIER, L.L.P., Plaintiff,**

v.

**Carroll L. KNIGHT, et al., Defendants.**

**Civil Action No. 08–1323 DAR**

United States District Court,
District of Columbia.

Signed March 25, 2014

Andre M. Gregorian, Randell Charles Ogg, Bode & Grenier, LLP, Washington, DC, for Plaintiff.

Daniel J. Kelly, Giarmarco, Mullins & Horton, PC, Troy, MI, Vaughn W. Royal, Vaughn W. Royal, Attorney at Law, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

DEBORAH A. ROBINSON, United States Magistrate Judge

Plaintiff Bode & Grenier, LLP, a law firm doing business in the District of Columbia, commenced this action against Defendants Carroll Knight, Delta Fuels, Inc., Delta Fuels of Michigan, Inc., and Knight Enterprises, Inc. "for damages arising out of Defendants' failure to pay Plaintiff for legal services that Plaintiff provided to Defendants." *See* Complaint and Jury Demand (Document No. 16). Defendants asserted a counterclaim against Plaintiff, alleging that Plaintiff violated its fiduciary duties by disclosing client confidences in its complaint. Defendants' Answer to Complaint, Affirmative Defenses, Counterclaim and Jury Demand (Document No. 2) at 8. The court (Roberts, C.J.), ruling on the parties' cross-motions for summary judgment, entered judgment for Plaintiff on Defendants' counterclaim, and denied Defendants' motion for summary judgment as to Plaintiff's claims. Memorandum Opinion and Order (Document No. 64) at 21–22.

Thereafter, Plaintiff filed a First Amended Complaint (Document No. 65) asserting claims against all Defendants for breach of contract (Count I) and *quantum meruit*/unjust enrichment (Count II); as to Defendant Carroll Knight, for recovery pursuant to a guaranty (Count III) and

piercing the corporate veil (Count IV); and for attorneys' fees as to all Defendants (Count V).

The parties consented to proceed before the undersigned United States Magistrate Judge for all purposes. Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Document No. 77); Referral to Magistrate Judge (Document No. 76). At the pretrial conference, the court granted Plaintiff's motion to dismiss Counts III and IV of its amended complaint. *See* Final Pretrial Order (Document No. 93) at 2. Following the pretrial conference, Defendants, in accordance with an order of the court, sought leave to amend their answer in order to assert additional affirmative defenses. The court denied Defendants' request, Memorandum Opinion and Order (Document No. 97), and trial commenced in accordance with the court's scheduling order.

After the jury was empaneled, the court granted in part a motion in limine filed by Plaintiff, and Defendants then withdrew their jury demand. 11/13/2012 Minute Entry. Accordingly, the jury was excused and the undersigned conducted a bench trial on Counts I, II, and V, the remaining counts. *Id.* Plaintiff withdrew Count II of its complaint, *id.*, and the court granted Plaintiff's motion for judgment on Count I, Order (Document No. 108). With respect to Count I, the breach of contract claim, the parties stipulated that the reasonable value of the legal services rendered by Plaintiff for the benefit of Defendants is $70,000. *See id.* at 1. The parties further stipulated that they would address Count V, the request for attorneys' fees, in accordance with Federal Rule of Civil Procedure 54(d). *See id.* at 1–2. Accordingly, the court entered judgment against all De-

fendants in the amount of $70,000. Judgment in a Civil Action (Document No. 109).

In accordance with the parties' agreement, Plaintiff filed a Motion for Attorneys' Fees (Document No. 111) requesting $264,362.69 in fees and costs incurred in this matter, pursuant to a provision in the parties' contract. Plaintiff subsequently sought leave of the court to reduce its request to $262,507.69, representing that certain billings were "inadvertently repeated" resulting in $1,855 in "overstated" fees. Plaintiff's Motion for Leave to File Amendment/Correction to Plaintiff's Motion for Attorneys' Fees and Memorandum in Support of Plaintiff's Motion for Attorneys' Fees ("Motion for Leave to Amend") (Document No. 113) at 1. Upon consideration of the motions, the memoranda in support thereof and opposition thereto, the attached exhibits, and the entire record herein, the undersigned will grant Plaintiff's motion to amend and grant in part Plaintiff's amended motion for attorneys' fees.

## CONTENTIONS OF THE PARTIES

In accordance with Federal Rule of Civil Procedure 54(d)(2), Plaintiff moves for "attorneys' fees and expenses pursuant to the attorneys' fee and expense provision in the operative Retainer Agreement," contending that its request is reasonable. Amended Memorandum in Support of Plaintiff's Motion for Attorneys' Fees ("Plaintiff's Memorandum") (Document No. 113–2) at 1–2. More specifically, Plaintiff contends that the number of hours billed are based on "detailed, contemporaneous time records maintained by counsel in the ordinary course of business," and that the hours expended were "necessary to respond to the issues and arguments raised by Defendants and/or necessary to vindicate the rights of Plaintiff." [1] *Id.* at 8. With re-

---

1. Plaintiff also raises several arguments concerning its contention that "Defendants ran

up the expense and cost of this litigation...." Plaintiff's Memorandum at 3–6. The under-

spect to the hourly rates charged, Plaintiff contends that "the billing rates for each [attorney] are accepted within the *Laffey* matrix as reasonable for similarly experienced and qualified attorneys and paralegals in the District of Columbia." *Id.* at 10. With respect to the costs claimed, Plaintiff avers that it "incurred reasonable costs of litigation" and thus seeks the "actual costs" that it expended. *Id.* at 11.

Defendants, in opposition to Plaintiff's motion, first contend that the parties' "Promissory Note and [ ] Retention Letter should be read together so as to constitute a single, incorporated contract." Defendants' Memorandum in Opposition to Plaintiff's Motion for Attorney Fees ("Opposition") (Document No. 114) at 7. Defendants thus contend that the court should apply Michigan law in evaluating the fee request, pursuant to a choice-of-law provision in the Promissory Note, and should "cap" the fee award at $45,000 pursuant to a provision in the Promissory Note limiting attorneys' fees to 15 percent of the sum of the note. *Id.* at 11–12. With respect to the hours billed, Defendants, relying on Michigan law, submit that the court cannot award fees for hours incurred by Plaintiff while it was representing itself in this matter, and must thus limit the fee award to hours billed by attorney Randell Ogg. *Id.* at 12–14. In the alternative, if the court does not deny the hours billed by Plaintiff, Defendants submit that Plaintiff cannot recover fees for defending against the counterclaim because "it does not arise out of, or relate to, the underlying contract." *Id.* at 14. Finally, Defendants request that the court deny the fees billed by attorney Mark Leventhal, contending that "the time that

[he] spent on specific tasks was excessive and unreasonable." *Id.* at 17.

Plaintiff submits that the relevant contract is solely the Retainer Agreement, also referred to as the Retention Letter, and that the Promissory Note's provisions are not applicable because the two documents are not incorporated. Plaintiff's Reply to Defendants' Opposition to Motion for Attorneys' Fees ("Reply") (Document No. 115) at 7–10. Plaintiff maintains that District of Columbia law governs this matter, relying on choice-of-law analysis and the previous proceedings in this matter. *Id.* at 2–7. Plaintiff thus avers that under District of Columbia law, it is entitled to fees that it incurred while representing itself. *Id.* at 10–11. Plaintiff further avers that it can recover fees associated with litigating the counterclaim because it was "related to a defense in the contract claim which had to be overcome." *Id.* at 12. With respect to the fees billed by Mr. Leventhal, Plaintiff contends that Defendants failed to "identify specific time entries which they believe are excessive or unreasonable," *id.* at 14, and further contends that "[a] fair analysis of the time expended shows [it] was reasonable under the circumstances," *id.* at 15. Finally, Plaintiff seeks an additional $14,155 for the attorneys' fees that it incurred while preparing its reply brief. *Id.* at 2, 22.

## APPLICABLE STANDARD

While the general rule in our judicial system is that a "prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee" from the opposing party, this rule can "be overcome by an enforceable contract allocating attorney's fees." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)

signed has not addressed these issues, after determining that doing so is not necessary to

resolution of the request for fees.

(citations omitted) (internal quotation marks omitted). Rule 54 of the Federal Rules of Civil Procedure requires, "[u]nless a statute or a court order provides otherwise," that a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment," "specify the judgment and the statute, rule, or other grounds entitling the movant to the award," "state the amount sought or provide a fair estimate of it," and "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B).

 "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "[The] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates[.]" *Covington v. Dist. of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir. 1995) (citations omitted). "[A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Id.* (citation omitted). With respect to the prevailing market rates for "complex federal litigation," courts in this Circuit often utilize the *Laffey* matrix, "a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983), *rev'd on other grounds,* 746 F.2d 4 (D.C.Cir. 1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct.

3488, 87 L.Ed.2d 622 [ ] (1985)." [2] *Id.* at 1105 (footnote omitted); *see Harvey v. Mohammed,* 951 F.Supp.2d 47, 54 (D.D.C. 2013).

 In order to satisfy its burden concerning the number of hours, the party requesting fees must submit "sufficiently detailed information about the hours logged and the work done that permits the district court to make an independent determination whether or not the hours claimed are justified." *Carmel & Carmel PC v. Dellis Constr., Ltd.,* 858 F.Supp.2d 43, 47 (D.D.C.2012) (citation omitted) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.,* 675 F.2d 1319, 1327 (D.C.Cir.1982)) (internal quotation marks omitted). In addition to attorneys' fees, other litigation expenses "may also be included in the award if such expenses are routinely billed by the attorney to his or her client." *Id.* (citation omitted).

## DISCUSSION

### *Motion for leave to amend*

Shortly after filing its motion for attorneys' fees in this matter, Plaintiff filed a motion for leave to amend, seeking to "amend and/or correct the amount of attorney fees sought in its Motion for Attorneys' Fees [ ]." Motion for Leave to Amend at 1. Plaintiff represents that "[t]he billings for the month of February 2012 were inadvertently repeated," which "overstated the total fees by $1,855 (5.3 hours)." *Id.* To remedy this error, Plaintiff requests that it be granted leave to reduce its fee request from $264,362.69 to $262,507.69. Defendants acknowledge this request in their opposition, *see* Opposition at 1 n.1, but did not respond to Plaintiff's motion for leave to amend. Accordingly,

---

2. The Civil Division of the United States Attorney's Office for the District of Columbia updates and maintains a *Laffey* matrix, available at http://www.justice.gov/usao/dc/divisions/Laffey_Matrix2014.pdf.

the court will grant Plaintiff's motion as unopposed, will deny Plaintiff's original motion for attorneys' fees as moot, and will consider Plaintiff's amended motion for attorneys' fees in evaluating Plaintiff's fee request.

***Law governing motion for attorneys' fees***

Plaintiff and Defendant Carroll Knight executed a Retention Letter, dated August 7, 2007, which set forth the terms of Plaintiff's representation of Defendants, and provided that "[Defendants] will also be responsible for [Plaintiff's] costs of collecting any fees due and owing, including reasonable attorney fees and expenses, as well as interest from the date of commencement of any legal action to collect the balance." Declaration of William H. Bode in Support of Plaintiff['s] Motion for Attorneys' Fees ("Bode Declaration"), Exhibit 1 (Document No. 113–4). Plaintiff requests attorneys' fees pursuant to this contractual provision. *See* Amended Plaintiff's Motion for Attorneys' Fees at 1; Plaintiff's Memorandum at 1. Defendants aver that the terms of a Promissory Note, executed by the parties on the same day, also govern this matter because both documents constitute the parties' contract. Opposition at 7. More specifically, Defendants submit that a choice-of-law provision in the Promissory Note requires that this court apply Michigan law to Plaintiff's fee request, and that an attorneys' fee provision in the Promissory Note limits the amount of any fee award. Opposition at 11; *see* Opposition, Exhibit 2 (Document No. 114–2) at 1–2.

■ "Under general contract law, the plain and unambiguous meaning of an instrument is controlling, and the Court determines the intention of the parties from the language used by the parties to express their agreement." *Wash. Metro. Area Transit Auth. v. Mergentime Corp.,*

626 F.2d 959, 961 (D.C.Cir.1980) (citations omitted); *see also Tower Ins. Co. of New York v. Davis/Gilford,* No. 13–0781, 967 F.Supp.2d 72, 79–80, 2013 WL 4776049, at *5 (D.D.C. Sept. 6, 2013) (quoting *Aziken v. Dist. of Columbia,* 70 A.3d 213, 218–19 (D.C.2013)) ("In determining the meaning of contractual provisions, 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite meaning.'"). "It is a general rule that reference in a contract to extraneous writings renders them part of the agreement for indicated purposes[.]" *Md.-Nat'l Capital Park & Planning Comm'n v. Lynn,* 514 F.2d 829, 833 (D.C.Cir.1975) (citations omitted); *see also Guerini Stone Co. v. P.J. Carlin Constr. Co.,* 240 U.S. 264, 277, 36 S.Ct. 300, 60 L.Ed. 636 (1916) (citations omitted) ("[I]n the case of subcontracts, as in other cases of express agreements in writing, a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified."); *Kutler v. Carlin,* 139 F.3d 237, 246 (D.C.Cir.1998) (citing *Mergentime Corp.,* 626 F.2d at 962 n. 3).

■ After setting forth the terms of representation, the Retention Letter indicates that:

Notwithstanding the above, at the end of July 2007, this firm is owed the amount of $446,566 for legal services previously rendered in this matter. You have agreed to execute a Promissory Note in the amount of $300,000, payable in nine months, as a partial payment against this amount, and also to pay $20,000 per month for the next eight months as further partial payments of fees owed.

One-half of these monthly payments will be applied to the outstanding balance. Bode Declaration, Exhibit 1 at 2. Although the Retention Letter does reference the Promissory Note, the undersigned finds that it does so for the limited purpose of explaining the payment schedule for "legal services previously rendered" and amounts already owed, as opposed to incorporating the document into the terms applicable to legal fees incurred in the future. The reference to the Promissory Note in the Retention Letter is prefaced by the phrase "[n]otwithstanding the above." In contrast, in *Tower Insurance Co. of New York v. Davis/Gilford,* the court determined that it could "discern no other meaning or effect of th[e] language but to include the Subcontract's terms as provisions of the Performance Bond in their entirety," where the bond stated that the subcontract "is hereby referred to and made a part" of it. 967 F.Supp.2d at 80, 2013 WL 4776049, at *5 (internal quotation marks omitted). The court distinguished the circumstances from another case, *see* id., in which the Court of Appeals affirmed the district court's finding that the terms of a subcontract could "most reasonably be read to incorporate the prime contract . . . only in matters relating to work specifications and performance" where the references to the contract included language such as "insofar as they apply" and "insofar as they relate," *Wash. Metro. Area Transit Auth. ex rel. Noralco Corp. v. Norair Eng'g Corp.,* 553 F.2d 233, 235 (D.C.Cir.1977).

The cases relied upon by Defendants for the proposition that the documents should be construed as a single contract, *see* Opposition at 7–8, are distinguishable from the present circumstances. Unlike the situation in *Vicki Bagley Realty, Inc. v. Laufer,* where the court noted that the two documents "specifically referred to the lease as an attachment or addendum to the sales contract," 482 A.2d 359, 366 (D.C. 1984), the Promissory Note makes no mention of the Retention Letter, and while the Retention Letter mentions the Promissory Note, it does not explicitly indicate that it is an addendum to its own terms. In *Trans–Bay Engineers & Builders, Inc. v. Hills,* the three documents were "contemporaneously executed as part of one complete package" for "a single [construction] project." 551 F.2d 370, 379 (D.C.Cir. 1976). In this case, although the documents were executed on the same day, they address separate fees—fees already owed and fees to be incurred.

Although Defendants rely on other communications by the parties to "highlight the fact that both documents were intended to be incorporated together," *see* Opposition at 9–10, the court bases its finding on the unambiguous language used by the parties to set forth the terms of their agreement. Notably, the plain language of the two provisions of the Promissory Note invoked by Defendants expressly limit their applicability to the Promissory Note. The attorneys' fee provision provides that "[i]n the event of any default in the payment *of this Note* . . . . Such attorneys' fees shall not exceed fifteen [ ] percent of the principal sum of *this Note*." Opposition, Exhibit 2 at 1 (emphasis added). Similarly, the choice-of-law provision provides that "[t]his *note* shall be governed by the law of the State of Michigan." *Id.* at 2 (emphasis added). Moreover, if the parties intended to incorporate the Promissory Note into the Retention Letter, it is unclear why the two documents establish different terms for the collection of attorneys' fees. *Compare* Bode Declaration, Exhibit 1 at 2, *with* Opposition, Exhibit 2 at 1.

Finally, while the court bases its conclusion on the plain language of the docu-

ments at issue, it notes that the record of this matter, which has been pending since 2008, also undermines Defendants' contention. Defendants did not contend that this matter was not properly before the court due to the Promissory Note's choice-of-law provision, which provides that claims "shall be brought in a court sitting in the State of Michigan without exception." *See* Opposition, Exhibit 2 at 2. Although Defendants attempted to argue that a separate proceeding brought by Plaintiff in Michigan state court with respect to the Promissory Note barred the instant litigation through the doctrine of res judicata, the court disagreed. *See* Memorandum Opinion and Order (Document No. 64) at 11. When ruling on Defendants' counterclaim, the court applied District of Columbia law after noting that "[t]he parties both assert that the counterclaim is governed by the law of the District of Columbia." *Id.* at 12 n.4. In setting forth its statement of the case shortly before trial, Defendants averred that "[t]his is an action to recover unpaid legal fees pursuant to a *Retention Letter* entered into by the parties in August of 2007." Defendants' Amended Pretrial Statement (Document No. 92) at 2 (emphasis added). Defendants requested a jury trial, which the court granted in part, *see* Memorandum Order (Document No. 99), despite the stipulation in the Promissory Note that "[t]he parties agree to waive jury trial should suit be filed after default," *see* Opposition, Exhibit 2 at 2.

Because the terms of the Retention Letter and the Promissory Note make clear that the two documents were not incorporated to constitute a single contract between the parties, the court finds that the provisions of the Promissory Note are not applicable to the instant request for attorneys' fees. Accordingly, Defendants' requests that the choice-of-law provision ·be applied, and that the fee award be limited to $45,000, are both denied.

Defendants raise an alternative argument—that Michigan law should apply "since the documents were signed in the state of Michigan ..."—but offer no authority in support of this contention. *See* Opposition at 7. Defendants do not explain why this court should, after multiple years of litigation, apply Michigan law. Accordingly, the court will continue to apply District of Columbia law in construing the contractual provisions.

### Fees incurred by Plaintiff while representing itself

██ Defendants, relying on Michigan case law following the Supreme Court's decision in *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), contend that "[u]nder Michigan law, attorney fees incurred by Bode and Grenier while representing itself are unrecoverable." [3] Opposition at 14. Having rejected Defendants' contention that the court

---

**3.** Following the *Kay* decision, this Circuit observed that "[t]he Supreme Court has made clear ... that the exception to fees statutes for *individual* litigants who represent themselves does not extend to *organizational* litigants such as [the plaintiff law firm]." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 326 (D.C.Cir.2006) (concluding that a law firm that "represented itself in [FOIA] litigation" was eligible for attorneys' fees); *see also Pub. Emps. for Envtl. Responsibility v. U.S. Int'l Boundary & Water Comm'n*, No. 10–00019, 968 F.Supp.2d 85, 87, 2013 WL 4830915, at \*1 (D.D.C. Sept. 11, 2013) (citing *Baker*, 473 F.3d at 324–26) ("[A]n organization cannot be a *pro see* [sic] litigant because it is always represented by counsel, be it in-house or other."); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 901 F.Supp.2d 92, 97 (D.D.C.2012) (citing *Rowland v. Ca. Men's Colony*, 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) for the proposition that "[i]t has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel.").

should apply Michigan law, the court must also reject this argument.

Moreover, Defendants fail to address the distinction between awarding fees pursuant to an agreed-upon contractual provision, such is the case here, and awarding fees pursuant to fee-shifting provisions in statutes or court rules, as were the circumstances in the cited authority. *See Kay*, 499 U.S. at 433–38, 111 S.Ct. 1435 (considering the statutory text and legislative history in affirming the denial of an attorney's request for fees under 42 U.S.C. § 1988); *Omdahl v. W. Iron Cnty. Bd. of Educ.*, 478 Mich. 423, 733 N.W.2d 380 (2007) (considering whether an attorney proceeding pro se was entitled to fees under a state statute); *FMB–First Nat'l Bank v. Bailey*, 232 Mich.App. 711, 591 N.W.2d 676, 680–84 (1998) (reviewing fees awarded pursuant to a court rule regarding sanctions); *Watkins v. Manchester*, 220 Mich.App. 337, 559 N.W.2d 81, 84–86 (1996) (reviewing fees awarded pursuant to a "mediation sanction rule"). Where the court "is faced with a question of contract interpretation, not statutory interpretation ... the central question is not what Congress intended, but what the parties intended." *Wilcox v. Sisson*, No. 02–1455, 2006 WL 1443981, at *12 (D.D.C. May 25, 2006). Here, Defendants point to no language in the parties' contract which suggests that the parties intended to preclude fees incurred by Plaintiff while representing itself; nor has the court located any such language.

For these reasons, the court will not preclude fees incurred "from July 31, 2008, the date the Complaint was filed, until January 31, 2012, the date when [attorney Randell Ogg] first appeared in the case...." *See* Opposition at 14.

### Fees incurred while litigating counterclaim

■ In response to Plaintiff's initial complaint, Defendants brought a counterclaim alleging breach of fiduciary duty and seeking disgorgement or forfeiture of all legal fees paid by Defendants to Plaintiff, due to disclosures made by Plaintiff in its complaint. *See* Defendants' Answer to Complaint, Affirmative Defenses, Counterclaim and Jury Demand ("Answer") (Document No. 2) at 8–9. Defendants contend that they are "entitled to a reduction in fees in the amount of $33,605.00" for fees incurred by Plaintiff while defending against this counterclaim because it "does not arise out of, or relate to, the underlying contract." Opposition at 14, 16.

The attorneys' fee provision in the Retention Letter broadly states that "[y]ou will also be responsible for our costs of collecting any fees due and owing, including reasonable attorney fees and expenses...." Bode Declaration, Exhibit 1 at 2. Defendants, through their counterclaim, sought an equitable award of disgorgement of legal fees "in an amount equal to all sums of money paid." Answer at 9; *see* Memorandum Opinion and Order (Document No. 64) at 12–21. Because the relief requested affected fees already paid, Plaintiff, in defending against the counterclaim, did not incur "costs of collecting any fees due and owing." *See* Bode Declaration, Exhibit 1 at 2; *see also Nest & Totah Venture, LLC v. Deutsch*, 31 A.3d 1211, 1229 (D.C.2011) (citation omitted) (noting that the court "must examine 'any relevant contractual language [that] is required to determine the scope of any claimed fee-shifting provision' ").

However, as Plaintiff observes, *see* Reply at 11–12, Defendants also alleged breach of fiduciary duty, based on the same underlying conduct, as an affirmative defense, *see* Answer at 7; Defendants' Answer to First Amended Complaint, Affirmative Defenses, and Jury Demand (Document No. 68) at 9. In this context,

Defendants submitted that "Plaintiff is barred from relief by the virtue of its breaches of fiduciary duty to Defendants including, without limitation, unwarranted disclosure of confidences, secrets and privileged communications in the Complaint . . . ." *Id.* Thus, in responding to Defendants' contention that it breached its fiduciary duty, Plaintiff did incur "costs of collecting any fees due and owing" since the defense, if successful, would have affected Plaintiff's right to relief for outstanding fees. *Cf. Ambac Assur. Corp. v. Adelanto Pub. Util. Auth.,* No. 09–5087, 2013 WL 4615404, at *6 (S.D.N.Y. Aug. 29, 2013) (considering a request for fees pursuant to a contractual agreement under New York law and finding that because the defendant's counterclaims "overlap[ped]" with its affirmative defenses, "[w]ork done to defend against the counterclaim was the same work done to respond to the affirmative defenses" and thus, the plaintiff "should be reimbursed for the attorney's fees incurred in defending against the [defendant's] counterclaim"); *see also Singer v. Shannon & Luchs Co.,* 670 F.Supp. 1024, 1028 (D.D.C. 1987) (citations omitted) (observing that "[i]n interpreting similar provisions, other courts have held that where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim").

Therefore, the court will not reduce the fee award by eliminating the hours billed for defending against Defendants' counterclaim.

### Reasonableness of fee request

█ Plaintiff seeks $256,663.75 in attorneys' fees for 987.4 hours spent, and $5,843.94 for costs incurred during this litigation. Plaintiff's Memorandum at 8, 11. Plaintiff also seeks $14,155 in fees for 52 hours spent preparing its reply brief in support of its motion for fees. Reply at 22. The Retention Letter does not stipulate an hourly rate, number of hours, or means of calculation of attorneys' fees; rather, it provides that Defendants will be responsible for "reasonable attorney fees and expenses. . . ." *See* Bode Declaration, Exhibit 1. In the absence of a contractual provision, the court will apply the law of this Circuit in reviewing the reasonableness of Plaintiff's request. *See Carmel & Carmel PC v. Dellis Constr., Ltd.,* 858 F.Supp.2d 43 (D.D.C.2012) (applying the law of this Circuit in evaluating the reasonableness of a request for attorneys' fees pursuant to an escrow agreement); *Ghadersohi v. Health Research, Inc.,* No. 08–355S, 2011 WL 5040668, at *4–5 (W.D.N.Y. Oct. 21, 2011) (noting that in a case concerning a contractual right to attorneys' fees, "a federal court will enforce that contractual right so long as the contract is valid under state law," but applying precedent from the United States Court of Appeals for the Second Circuit in assessing the "calculation method" for the fees).

In support of its request, Plaintiff submits affidavits and invoices detailing the experience of each attorney, the hours spent on each activity, and the costs incurred. *See* Amended Declaration of Randell Ogg in Support of Plaintiff['s] Motion for Attorneys' Fees ("Ogg Declaration") (Document No. 113–3); Ogg Declaration, Exhibits 1 & 2; Bode Declaration; Bode Declaration, Exhibit 3; Supplemental Declaration of William H. Bode ("Supplemental Bode Declaration") (Document No. 115–1), Exhibit D; Supplemental Declaration of Randell Ogg in Support of Plaintiff['] Motion for Attorneys' Fees ("Supplemental Ogg Declaration") (Document No.

115–2), Exhibit 1. Plaintiff also sets forth the rate for each attorney that billed in this matter, and submits that each rate is "accepted within the *Laffey* matrix as reasonable for similarly experienced and qualified attorneys and paralegals in the District of Columbia." Plaintiff's Memorandum at 10.

Defendants do not object to the rates charged. *See* Opposition at 16. With respect to the hours billed, however, Defendants object to the hours billed by attorney Mark Leventhal. *See id.* Although it was not addressed by Defendants, since it was raised in Plaintiff's reply brief, the court will also evaluate Plaintiff's request for additional fees incurred while preparing its reply brief.

*Hours billed by attorney Mark Leventhal*

Defendants request that the court reduce Plaintiff's fee award by $100,787.50, the amount incurred by Mr. Leventhal, contending that "the time that [he] spent on specific tasks was excessive and unreasonable," in light of "the work performed by the other attorney[s] on the same projects while working on the case." Opposition at 17.

Defendants' characterization of Mr. Leventhal's billing as "egregious," *see id.,* is unpersuasive. The comparisons between hours billed by Mr. Leventhal and hours billed by other attorneys in this matter do not provide a sufficient basis for the court to deny Mr. Leventhal's fees, given that he was one of the primary associates working on this matter for Plaintiff during the relevant time period. Bode Declaration ¶ 25; Supplemental Bode Declaration ¶ 8; *cf. Adolph Coors Co. v. Truck Ins. Exch.*, 383 F.Supp.2d 93, 97 (D.D.C.2005) (opining that a "partner should be performing supervisory work and should not need to expend almost half of the time spent by an associate on a particular matter").

Additionally, Defendants do not assert the basis for their objections to the number of hours Mr. Leventhal spent on certain activities. *See* Opposition at 17. In the one case relied on by Defendants, the Court of Appeals denied the fees billed by one of the attorneys after noting that she "submitted outrageously excessive time entries" for tasks such as completing a notice of appearance, drafting "relatively brief letters," drafting a "boilerplate memorandum" without "citations to or discussion of the [most relevant] legal authorities," and conferring with counsel. *See Envtl. Def. Fund, Inc. v. Reilly,* 1 F.3d 1254, 1259–60 (D.C.Cir.1993). In contrast, Defendants take issue with time spent on more substantive activities such as objections to the undersigned's Report and Recommendations on the parties' cross-motions for summary judgment, opposition to Defendants' previous motion to limit attorneys' fees, and its pretrial statement. *See* Opposition at 17. Defendants summarily conclude that the time spent "was excessive and unreasonable" without offering any basis, such as the length or scope of the filings or the issues presented therein, from which the court could conclude that the hours billed are unreasonable, particularly since Plaintiff was successful at the summary judgment stage of litigation and at trial. *See* Memorandum Opinion and Order (Document No. 64) (denying Defendants' motion for summary judgment as to Plaintiff's claims, and granting Plaintiff's motion for summary judgment as to Defendants' counterclaim); Order (Document No. 108) (granting Plaintiff's motion for judgment).

Plaintiff has provided "sufficiently detailed information about the hours logged and the work done" by Mr. Leventhal such that the court can "make an independent determination whether or not the hours

claimed are justified." *See Carmel & Carmel*, 858 F.Supp.2d at 47 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C.Cir.1982)); *see also* Bode Declaration ¶ 25; Bode Declaration, Exhibit 3. Accordingly, the court will award fees for the hours billed by Mr. Leventhal.

*Hours billed for preparing reply brief*

 Plaintiff seeks an additional $14,155 in fees for 52 hours spent preparing its reply brief in support of its motion for fees. Reply at 22; Supplemental Bode Declaration, Exhibit D; Supplemental Ogg Declaration, Exhibit 1.

Many of the points and authorities raised in Plaintiff's reply brief, albeit not all, were previously raised in Plaintiff's opposition to Defendants' motion to limit the fee award. *Compare* Reply, *with* Plaintiff's Opposition to Defendants' Motion to Limit Attorney Fee Award (Document No. 80). *See* Reply at 1 ("Defendants have reiterated their previous Motion to Limit Attorneys' Fees [ ] which, as Plaintiff has previously argued, misstated the facts and law [ ]."). Plaintiff billed for approximately 70 hours of work on its opposition. *See* Ogg Declaration, Exhibit 1; Bode Declaration, Exhibit 3. The court thus finds that the additional 52 hours billed for the reply is unreasonable given the overlap between the submissions. Recognizing that Plaintiff's attorneys undertook necessary work to update the memorandum and corresponding exhibits, the court will not deny the entire $14,155 amount. Instead, the court will exercise its discretion and reduce the requested amount by 50 percent. *See Carmel & Carmel*, 858 F.Supp.2d at 47 ("If a

court determines that duplication or waste of effort has occurred, it has the discretion to simply reduce the proposed fee by a reasonable amount without an item-by-item accounting."); *see also id.* at 50–51 (reducing fees associated with an opposition and a fee application after finding that the number of hours billed for the work in question were "excessive" and "unreasonable"); *David v. Dist. of Columbia*, 489 F.Supp.2d 45, 51 (D.D.C.2007) (reducing the requested attorneys' fee award by a percentage in light of the plaintiff's level of success and "in lieu of a line-by line analysis of each entry in Plaintiff's counsel's billing records"), *adopted by* 674 F.Supp.2d 34 (D.D.C.2009).

**CONCLUSION**

For the foregoing reasons, it is, this 25th day of March, 2014,

**ORDERED** that Plaintiff's Motion for Leave to File Amendment/Correction to Plaintiff's Motion for Attorneys' Fees (Document No. 113) is **GRANTED**, and accordingly, Plaintiff's Motion for Attorneys' Fees (Document No. 111) is **DENIED AS MOOT**; and it is

**FURTHER ORDERED** that the Amended Plaintiff's Motion for Attorneys' Fees (Document No. 113–1) is **GRANTED IN PART**, and that Plaintiff is awarded $269,585.19 in attorneys' fees and costs.

**THIS IS A FINAL APPEALABLE ORDER.**[4]

---

4. In addition, the attention of counsel is directed to the court's November 29, 2012 minute order, by which the court granted the

parties' joint motion for an extension of time to appeal the court's November 20, 2012 judgment in favor of Plaintiff as to Count I

until after disposition of Plaintiff's motion for attorneys' fees.