# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 8, 2015      Decided October 23, 2015

No. 14-7104

BODE & GRENIER, LLP,
APPELLEE

v.

CARROLL L. KNIGHT, ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01323)

*Joseph Andrew Ahern* argued the cause for appellants. With him on the briefs was *Ben M. Gonek.*

*Randell C. Ogg* argued the cause and filed the brief for appellee.

Before: ROGERS, BROWN and SRINIVASAN, *Circuit Judges.*

Opinion filed for the Court by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: "Hell hath no fury like a lawyer scorned." Tom Gordon, *Hell Hath No Fury Like a Lawyer Scorned*, WALL ST. J., (Jan. 28, 2015), http://www.wsj.com/articles/tom-gordon-hell-hath-no-fury-like-a-lawyer-scorned-1422489433. The problem with scorning a lawyer is that lawyers tend to sue. So it is here. A law firm based in the District of Columbia, Bode & Grenier, LLP, provided legal services to three Michigan-based companies owned and managed by Carroll Knight ("appellants"). More than ten years into the relationship, appellants stopped paying the bill. The predictable result? Litigation. The law firm prevailed in the district court, winning a judgment for $70,000 in overdue legal fees—plus $269,585.19 in legal fees for having to litigate over $70,000 in legal fees. We affirm the district court.

**I**

Appellants offer petroleum fueling products and services, ranging from service stations to large-scale petroleum storage. Based in Michigan, the appellant companies operate in multiple Midwestern states. Bode & Grenier represented appellants between 1994 and 2008, advising on taxation, gasoline contracts, petroleum futures and various regulatory enforcement and litigation matters. Throughout most of the relationship, no written agreement governed the terms of legal representation or manner of payment. Appellants paid the law firm monthly based on oral agreements.

On November 25, 2005, catastrophe struck. Approximately 100,000 gallons of petroleum spilled out of holding tanks owned by appellants in Toledo, Ohio. Appellants stopped the leak, but were powerless to stop the flood of regulatory actions that followed in its wake. A month after the spill, Knight called Bode & Grenier's

managing partner, William Bode, to request the firm's services. The firm soon tackled regulatory enforcement proceedings in Ohio, a lawsuit in federal court in Ohio, and counseled the company on other regulatory issues. As before, the firm billed appellants monthly.

According to the complaint, appellants began paying their legal fees sporadically between December 2005 and January 2007. At some point, they stopped paying. Bode issued an ultimatum: unless Knight and his companies agreed to pay overdue legal fees, and signed a document setting out the terms of prospective relations, the firm would immediately withdraw from all pending cases. Knight capitulated. On August 7, 2007, the parties executed three agreements: a Retention Letter setting out the terms of future relations; a Promissory Note ("Note") obligating appellants to pay $300,000 in past-due legal fees; and a Confession of Judgment ("Confession") authorizing the firm to instantly secure judgment if appellants failed to satisfy the Note by May 1, 2008.

The first of May came and went without appellants satisfying the Note. Wasting no time, the firm entered the Confession of Judgment in Michigan state court the next day, May 2, 2008. Judgment issued that very day, without a hearing or adversarial process, for $302,500 ($300,000 due under the Note, plus $2,500 in attorney's fees).

Three months later, in July 2008, Bode & Grenier filed the instant federal case in the United States District Court for the District of Columbia seeking $75,105.97 in unpaid legal fees owed under the Retention Letter. The complaint brought claims for breach of contract, unjust enrichment, guaranty, and a petition to pierce the corporate veil. Appellants counterclaimed, seeking disgorgement of all legal fees to

compensate for alleged disclosures of client confidences in the complaint. Discovery closed in February 2009.

In March 2009, both parties moved for summary judgment. Appellants argued the Confession of Judgment filed in Michigan barred the federal suit under res judicata principles. Bode & Grenier opposed the counterclaim as baseless. In September 2011, the district court granted Bode & Grenier's motion for summary judgment on the counterclaim, and denied appellants' motion for summary judgment based on res judicata. *Bode & Grenier, LLP v. Knight*, 821 F. Supp. 2d 57, 59 (D.D.C. 2011).

In November 2011, Bode & Grenier amended its complaint, adding a claim for attorney's fees. Appellants filed an amended answer in January 2012. That answer, like their original answer, admitted Bode & Grenier's basic allegation that the law firm "provided legal services to Defendants pursuant to the agreement" between the parties. First Amended Complaint ¶ 33; Defendant's Answer to First Amended Complaint ¶ 33. Only one part of the answer was new: an affirmative defense attacking the law firm's fees as unreasonable. With a new defense came further discovery, opened in March 2012.

Trial was set for November 13, 2012. In September 2012, appellants filed a pretrial statement that raised multiple defenses not included in their answer, including duress, failure of consideration and failure to comply with a condition precedent. The latter defense argued the law firm could not recover because its legal services were not approved by the "Litigation Committee" referred to in the Retention Letter.[1]

---

[1] Various clauses in the Retention Letter refer to the Litigation Committee. Without defining the Committee's composition, the

The court struck the added defenses but permitted appellants to file a motion requesting leave to amend, which they filed on October 11, 2012, barely four weeks before trial. In their motion, appellants dropped the defense of duress, but stood by the other two. The court denied the motion. Allowing leave to amend, the court found, would unduly delay trial, requiring a third round of discovery. It would also prejudice the plaintiff, forcing them to face newly christened defenses not raised over the course of four years of litigation.

Trial went forward as scheduled on November 13, 2012. Bode & Grenier voluntarily dismissed all but the breach of contract and attorney's fee claims, the latter of which the parties agreed to handle in post-trial proceedings. Following a one-day bench trial, the court found in favor of Bode & Grenier on the breach of contract claim, entering judgment for $70,000, the amount of unpaid legal fees stipulated by the parties. In subsequent proceedings, the court granted the law firm's claim for attorney's fees, rejecting the contention that the fees were either precluded by Michigan Law or limited by the Promissory Note. *Bode & Grenier, LLP v. Knight*, 31 F. Supp. 3d 111, 113–20 (D.D.C. 2014). Appellants timely appealed. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

**II**

We must first consider whether the Confession of Judgment filed in Michigan state court precluded the current suit under res judicata principles. The trial court rejected

Retention Letter notes that the "Firm's role and scope of work in these matters will be determined by the Litigation Committee . . . ." J.A. 209. The Committee also "approve[s] the anticipated fees incurred for the work to be performed." *Id.*

appellants' summary judgment motion seeking preclusion. We review that decision de novo. *See, e.g.*, *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998). "[A] party is only entitled to summary judgment if the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact." *Id.* Applying that framework, we affirm the decision.

Federal courts extend to state court judgments the same preclusive effect those judgments would receive in the originating state. *See* 28 U.S.C. § 1738 (requiring that state "judicial proceedings . . . shall have the same full faith and credit" in other courts as they had "by law or usage in the courts of such State . . . from which they are taken"); *see also Thomas v. Wash. Gas Light Co.*, 448 U.S. 261, 270 (1980) (plurality opinion) (noting that the requirement to award preclusive effect to state court judgments, "if not compelled by the Full Faith and Credit Clause [of the Constitution] . . . is surely required by 28 U.S.C. § 1738"). Michigan state law thus determines the preclusive effect of the Confession, if any.

Michigan statute prescribes the procedure for procuring a Confession of Judgment. MICH. COMP. LAWS § 600.2906. Confessions of Judgment may take effect, "although there is no suit then pending between the parties," upon the filing of the Confession, "signed by [a Michigan] attorney," with the local court. *Id.* § 600.2906. The document containing the confession must be "distinct from that containing the bond, contract or other evidence of the demand for which such judgment was confessed." *Id.* § 600.2906(1). The process "is purely ex parte." *Gordon v. Heller*, 260 N.W. 156, 157 (Mich. 1935). The party against whom judgment is entered never appears, having already consented to judgment.

Michigan courts have not considered the precise question before us: whether a Confession of Judgment triggers claim preclusion, known as res judicata in Michigan. "The doctrine of res judicata is employed" in Michigan "to prevent multiple suits litigating the same cause of action." *Adair v. State*, 680 N.W. 2d 386, 396 (Mich. 2004). Subsequent actions are barred "when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id.* The party invoking res judicata bears the burden to prove it applies. *Baraga Cnty. v. State Tax Comm'n*, 645 N.W. 2d 13, 16 (Mich. 2002).

Under either of Michigan's "two alternative tests for determining when res judicata will bar a claim in a second lawsuit because the claim could have, with the exercise of reasonable diligence, been brought in the first action," *Begin v. Mich. Bell Tel. Co.,* 773 N.W. 2d 271, 283 (Mich. Ct. App. 2009), *overruled on other grounds by Admire v. Auto-Owners Ins. Co.,* 831 N.W. 2d 849 (Mich. 2013), preclusion through a Confession of Judgment is unlikely. First, the "'same evidence' test looks to 'whether the same facts or evidence are essential to the maintenance of the two actions.'" *Id.* (quoting *Jones v. State Farm Mut. Auto. Ins. Co.,* 509 N.W. 2d 829, 834 (Mich. Ct. App. 1993)). Claim preclusion blocks a second action "between the same parties when the evidence or essential facts are identical." *Id.* (quoting *Dart v. Dart,* 597 N.W. 2d 82, 88 (Mich. 1999)).

The second test casts a wider net by examining the relevant transactions of events. "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation,* [and] whether

they form a convenient trial unit . . . ." *Adair*, 680 N.W. 2d at 398; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982) ("RESTATEMENT") (substantially the same). Transaction-based preclusion "is justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined." RESTATEMENT § 24 cmt. a.

Here, the Confession of Judgment entered in Michigan state court had no preclusive effect. The Promissory Note underlying the Confession was carefully drawn, and Michigan Supreme Court precedent indicates that a Confession is a judgment without expectation it will be joined with other claims. *See Gordon*, 260 N.W. at 157.

The Confession rested on a narrowly tailored Promissory Note obligating appellants to pay $300,000 in overdue legal fees. In the event of default, the Confession allowed the law firm to receive near-instantaneous judgment on the Note. And that is precisely what happened: appellants defaulted, and the firm executed the Confession in Michigan without a hearing or adversarial process. Appellants appeared only constructively. Judgment issued as a purely ministerial act: no judge reviewed the substance of the dispute—the underlying evidence that proved appellants had failed to pay their bills. Under Michigan law, the court simply enforced the clear language of the Confession and Note.

We have no difficulty concluding the present suit need not have been brought earlier. Neither of the alternative tests Michigan employs to determine whether a subsequent action could have been brought in a prior case supports preclusion. First, the Confession and the present action rely on different

evidence: the former on a Note for past debts, the latter on prospective fees owed under the Retention Letter.

The same transaction test asks whether the suits share a "single group of operative facts" and "form a convenient trial unit." *Adair*, 680 N.W. 2d at 397–98. Here, the answer is no. Michigan's Supreme Court makes clear that Confessions of Judgment are entered "purely ex parte," which implies they are entered without being joined to other claims. *Gordon*, 260 N.W. at 157. As the trial judge found, the mechanical process of entering a Confession hardly "lend[s] itself well to adding additional claims based upon the underlying debt." *Bode & Grenier, LLP*, 821 F. Supp. 2d at 63.

Michigan courts handle Confessions based on clear statutory command: as long as the parties present the appropriate paperwork and signatures, judgment issues immediately. Almost nothing about that process resembles an ordinary claim, which must be handled in the course of adversarial litigation, and ultimately examined by a judge or jury. These differences call to mind the Restatement's warning that the same transaction test applies only "when the parties have ample procedural means for fully developing the entire transaction" in the first action. *See* RESTATEMENT § 24 cmt. a. Requiring litigants to pile on every other available claim when filing a Confession would transform the entire process, hoisting the parties into adversarial litigation when they only meant to settle one part of their dispute. *See id.* § 26(1)(a) (noting that preclusion should be unavailable when "the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein").

Because Confessions rest on mutual agreement, they will often involve straightforward obligations, such as the payment of a precise sum. Rigidly applying res judicata in this context

may deter parties from agreeing to Confessions in the first place, an outcome counter to Michigan's general preference for the private settlement of disputes. *See Galperin v. Dep't of Revenue of Mich.*, 42 N.W. 2d 823, 825–26 (Mich. 1950) ("The [Michigan Supreme] Court has often held that the settlement of disputed matters and the compromise of doubtful claims is favored by law. Efforts toward amicable settlement of disputed claims to avoid litigation meet with judicial approval.").

Accordingly, we hold that the Confession did not bar the current suit under principles of res judicata.

### III

### A

Appellants next challenge the denial of a motion to amend their answer. Days before trial, appellants sought to add two affirmative defenses—failure of a condition precedent and failure of consideration—and remove their earlier admission that the law firm provided legal services pursuant to the "agreement." Each of the new defenses took aim at a clause in the Retention Letter calling for a "Litigation Committee" (of unspecified membership) to approve legal services and fees. The trial court denied the amendment, finding the request was unduly delayed and would have prejudiced the plaintiff.

We review the denial under an abuse of discretion standard. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The Federal Rules of Civil Procedure permit parties to amend their pleadings "once as a matter of course" within certain time periods. FED. R. CIV. P. 15(a)(1)(A). Otherwise, amendment requires "the opposing

party's written consent or the court's leave." *Id.* § 15(a)(2). Courts must "freely give leave when justice so requires." *Id.* "Although the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment.'" *Firestone*, 76 F.3d at 1208 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The district court did not abuse its discretion in denying the belated addition of new defenses that would have required additional discovery. The issues appellants sought to interject—centering on the role of the Litigation Committee—threatened to fundamentally reshape the landscape of the litigation. Neither of two prior answers raised those issues. Instead, both answers admitted the law firm provided legal services pursuant to the parties' agreement. Two rounds of discovery focused, quite appropriately, on issues raised in the original and amended complaints and answers. Accordingly, the district court concluded the amendment would have likely required additional discovery. *Bode & Grenier, LLP v. Knight*, No. 08-1323, slip op. at 7 (D.D.C. Nov. 5, 2012).

The request simply came too late. The motion to amend arrived four years after litigation began, one year after summary judgment motions were decided, eight months after filing an amended answer and only days before trial. That is the very picture of undue delay. *Cf. Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012) (finding undue delay when a motion to amend arrived "five years after the initial complaint and after discovery had closed"); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987) (finding undue delay on a motion to amend filed seven years after litigation began, when

discovery had closed and the court had decided summary judgment motions); *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977) (affirming a denial to amend a pleading thirty-eight months after the filing of the complaint). Had the motion been granted, discovery would have been reopened, the scheduling order replaced and the trial date reset.

Appellants suggest they gave fair notice of the Litigation Committee defense in deposition questions posed years before they filed the motion to amend. That argument fails. If anything, it proves only that the defenses they sought to raise were "based on facts known prior to the completion of discovery." *Anderson v. USAir, Inc.*, 818 F.2d 49, 57 (D.C. Cir. 1987). Appellants had no reason to wait years before addressing those defenses in their answer. Indeed, moving to amend on the eve of trial bears the hallmarks of gamesmanship, defeating the orderly character of litigation the Federal Rules of Civil Procedure seek to foster. As this court has emphasized, "Strategic or merely lazy circumventions of a legal process grounded in a sound policy have the effect of eroding the regularized, rational character of litigation to the detriment of practitioners and clients alike." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 345 (D.C. Cir. 1997). The trial court did not abuse its discretion in denying amendment.

**B**

Affirming the denial resolves two related issues. First, appellants claim the district court improperly concluded the Litigation Committee's approval did not constitute a condition precedent. We cannot decide this question because the trial judge declined to rule on it. Before trial, appellants offered a short motion seeking judgment as a matter of law. That motion argued appellants should prevail because the

Litigation Committee constituted a condition precedent, which the plaintiffs had failed to plead appropriately. The court found that motion "plainly premature" and "decline[d] to address it." J.A. 341 n.2. During trial, the court again declined to resolve the issue. *See* J.A. 494 ("I have made no ruling regarding condition precedent . . . because I have no occasion to make such a ruling. And that is because the defendants admitted [in each of two answers filed] that the plaintiff provided legal services pursuant to the agreement."). "It is the general rule, of course, that a federal appellate court does not consider an issue not passed on below." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). That rule applies here. "The issue before us is the denial of the leave to amend and not the merits of [the] new theory" appellants attempt to raise. *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012).

Second, appellants' opening brief intimates the district court erred by granting a motion in limine precluding mention of the Litigation Committee defense. But appellants' papers stop at suggestion: the issue is nowhere explained. Their opening brief lists the motion in limine in the rulings under review section, but does not explain how the judge erred in granting the motion. "Simply listing the issues on review without briefing them does not preserve them." *Terry v. Reno*, 101 F.3d 1412, 1415 (D.C. Cir. 1996); *Democratic Cent. Comm. v. Wash. Metro. Area Transit Comm'n*, 485 F.2d 786, 790 n.16 (D.C. Cir. 1973) (finding waiver where appellant provided "no argument whatever in support" of certain issues). As the issue is waived, we do not address it.

**IV**

After trial, the district court awarded the plaintiff $269,585.19 in attorney's fees under a fee-shifting clause in

the Retention Letter.  *See Bode & Grenier, LLP*, 31 F. Supp. 3d at 123.  The court interpreted the Retention Letter, which has no choice-of-law clause, in light of D.C. law, refusing to incorporate a provision in the Promissory Note requiring the application of Michigan law.

We confront two issues on appeal.  First, appellants suggest the district court erred in failing to incorporate the Promissory Note's choice-of-law and attorney's fee clauses.  According to appellants, the court should have applied Michigan law to the Retention Letter and limited the recovery of attorney's fees to fifteen percent of the debt.  Second, appellants contend that, under Michigan law, Bode & Grenier cannot recover fees incurred while representing itself, which the law firm did during much of the proceedings in district court.

We review questions involving contract interpretation and choice-of-law de novo.  *Essex Ins. Co. v. Doe ex rel. Doe*, 511 F.3d 198, 200 (D.C. Cir. 2008); *Chicago Ins. Co. v. Paulson & Nace, PLLC*, 783 F.3d 897, 901 (D.C. Cir. 2015).  Because both of appellants' arguments lack merit, we affirm the district court.

**A**

The Retention Letter did not incorporate the Promissory Note's choice-of-law and attorney's fee clauses. "Interpretation of a contract, like statutory and treaty interpretation, must begin with the plain meaning of the language." *Am. Fed. Gov. Employees, Local 2924 v. FLRA*, 470 F.3d 375, 381 (D.C. Cir. 2006).  Here, the inquiry begins and ends with the text.  This suit rests on the Retention Letter, which contains no choice-of-law clause.  Bode & Grenier seeks to recover under the Retention Letter's fee-shifting

clause, which makes appellants "responsible for [the plaintiff's] costs of collecting any fees due and owing, including reasonable attorney fees and expenses . . . ." J.A. 210. The Retention Letter makes only brief mention of the separate Promissory Note signed the same day:

> Notwithstanding the above . . . this firm is owed the amount of $446,566 for legal services previously rendered in this matter. You have agreed to execute a Promissory Note in the amount of $300,000, payable in nine months, as a partial payment against that amount, and also to pay $20,000 per month for the next eight months as further partial payments of fees owed.

*Id.*

"It is a general rule" of contract interpretation "that reference . . . to extraneous writings renders them part of the agreement for indicated purposes" only. *Md.-Nat'l Capital Park & Planning Comm'n v. Lynn*, 514 F.2d 829, 833 (D.C. Cir. 1975). For that reason, a subcontract referencing the terms of the prime contract only "insofar as they apply" and "insofar as they relate . . . to the work undertaken herein" did not incorporate the prime contract's dispute clause. *Wash. Metro. Area Transit Auth. ex rel. Noralco Corp. v. Norair Eng'g Corp.*, 553 F.2d 233, 234–36 (D.C. Cir. 1977). Such nuanced language was "insufficiently specific to incorporate" the dispute clause "by reference." *Id.* at 235; *see also Johnson, Inc. v. Basic Const. Co.*, 429 F.2d 764, 775 (D.C. Cir. 1970). A different situation exists where contractual language clearly exhibits an intent to incorporate another document. *See, e.g.*, *Tower Ins. Co. of N.Y. v. Davis/Gilford*, 967 F. Supp. 2d 72, 80 (D.D.C. 2013). For instance, language stating that another document is "hereby referred to and made a part hereof" may support total incorporation. *Id.* at 75, 80;

*see also Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 366 (D.C. 1984) (finding a sales contract and a lease incorporated where both documents specifically "referred to the lease as an attachment or addendum to the sales contract").

In this case, the Retention Letter did not incorporate the Promissory Note's choice-of-law and attorney's fees provisions. The Retention Letter does not refer to the Promissory Note as an attachment. Nor does it incorporate the Promissory Note "insofar as it applies" like the contract at issue in *Washington Metropolitan Area Transit Authority. See* 553 F.2d at 234–36. Indeed, the sole mention of the Promissory Note comes at the close of the Retention Letter, "prefaced by the phrase '[n]otwithstanding the above.'" *Bode & Grenier, LLP*, 31 F. Supp. 3d at 118. As the district court concluded, the Retention Letter referenced the Promissory Note "for the limited purpose of explaining the payment schedule for 'legal services previously rendered' and amounts already owed . . . ." *Id.* That outcome leaves the Retention Letter without a choice-of-law clause. It also requires reading the attorney's fees clause without reference to the Promissory Note's language limiting such fees to "fifteen (15) percent of the principal sum of this Note." J.A. 212. That fees-cap applies only to the Promissory Note, not the Retention Letter.

Appellants suggest the documents must be construed together because they were signed simultaneously and concern similar subjects. Appellant Br. 26–27. It is true that, "Where two or more written agreements are contemporaneously executed as part of one complete package, they should be construed together and should be construed as consistent with each other, even if not all the agreements are signed by the same parties." *Trans-Bay Eng'rs & Builders, Inc. v. Hills*, 551 F.2d 370, 379 (D.C. Cir. 1976). *Trans-Bay*

held that three documents—a Construction Contract, a Building Loan Agreement and a Regulatory Agreement— were incorporated because they "were part of a package for a single project." *Id.* A different scenario exists here. As the district court found, "although the documents were executed on the same day, they address separate fees—fees already owed and fees to be incurred." *Bode & Grenier, LLP*, 31 F. Supp. 3d at 118.

Considering the Note and the Retention Letter together does not change our conclusion. The Promissory Note carefully limits its reach to its four corners. "*This note* shall be governed by" Michigan law, reads the choice-of-law clause. J.A. 213 (emphasis added). "Any dispute, claim, or cause of action arising out of or in connection with *this note* shall be brought in a court sitting in the State of Michigan without exception." *Id.* (emphasis added). Likewise, the attorney's fee provision applies only "[i]n the event of default in the payment of *this Note*, and if suit is brought *hereon*"; in that case, recovery of fees is capped at "fifteen (15) percent of the principal sum of *this Note*." *Id.* (emphasis added). "Note" clearly refers to the Promissory Note—not the separate Retention Letter. Such carefully drafted clauses confirm the parties knew how to choose the applicable law and cap attorney's fees when they saw fit. They chose not to do so in the Retention Letter. Thus, even if we were to read the documents together, the choice-of-law and attorney's fee clauses would not migrate to the Retention Letter.

Appellants also ask us to look beyond contractual language and consider correspondence between the parties. This we cannot do. Under both Michigan and D.C. law, courts may only resort to extrinsic evidence in interpreting a contract when the language admits of no clear interpretation. *See Burkhardt v. Bailey*, 680 N.W. 2d 453, 464 (Mich. Ct.

App. 2004) ("But when the language of a document is clear and unambiguous, interpretation is limited to the actual words used, and parol evidence is inadmissible to prove a different intent.") (omitting citations); *In re Bailey*, 883 A.2d 106, 118 (D.C. 2005) (substantially the same). In this case, the parties' written agreements speak for themselves, and do not support incorporation.

**B**

The second issue before us asks whether Michigan or D.C. law applies to the Retention Letter. If Michigan law applies, we must determine whether Michigan permits self-represented law firms to recover attorney's fees pursuant to contract. The district court applied D.C. law and rejected the argument that Michigan law precluded recovery. We affirm.

Because the Retention Letter neither contains nor incorporates a choice-of-law clause, we must determine which jurisdiction's substantive laws to apply. "In a diversity case" like this one, the "court follows the choice-of-law rules of the jurisdiction in which it sits." *Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 193 (D.C. Cir. 1999).

"[I]n the absence of an effective choice of law by the parties," the District of Columbia employs "'a constructive blending' of the 'governmental interest analysis' and the 'most significant relationship test,' the latter as expressed in the Restatement (Second) of Conflicts of Law § 188 (1988)." *Id.* at 193–94 (quoting *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 41 n.18 (D.C. 1989)). The analysis centers on five factors: "[1] the place of contracting, [2] the place of negotiation of the contract, [3] the place of performance, [4] the location of the subject matter of the contract, and [5] the domicil, . . . place of incorporation and

place of business of the parties." RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188(2)(a)–(e) (1988). For service contracts, "the Restatement assigns presumptive weight to the place where the services are to be rendered." *Stephen A. Goldberg Co.,* 170 F.3d at 194; *see* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 196 (applying "the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship"). If the scales of interest come out even, D.C. generally employs its own law. *See Kaiser-Georgetown Cmty. Health Plan, Inc. v. Stutsman*, 491 A.2d 502, 509 n.10 (D.C. 1985).

Here, the factors weigh in favor of applying D.C. law, not Michigan law. The first two factors—the place of contracting and place of negotiation—are inconclusive. Mr. Knight negotiated from Michigan, and Bode & Grenier from D.C. Likewise, the fifth factor—domicil—weighs evenly on both ends.

In a dispute over a service contract, no factor matters more than the place of performance. Nearly all of the legal services at issue were performed in D.C. by attorneys licensed to practice in D.C. *See* Appellee Br. 28–30. While the representation required occasional travel outside D.C. (mainly to Ohio), we find no evidence suggesting the firm's attorneys routinely practiced in Michigan. The firm managed the representation from its sole office, located in D.C. The fourth factor—the location of the subject matter of the contract— supports applying D.C. law for the same reasons. This contract called for legal services managed and performed in D.C.

Though the Restatement factors lead us to apply D.C. law, we must pause to independently consider "which jurisdiction has the greatest interest in the subject." *Stephen A. Goldberg Co.,* 170 F.3d at 194. Michigan had relatively little connection to the services at issue. Though Knight's companies call Michigan home, the legal services here concerned an oil spill in Ohio that triggered various regulatory and legal actions. None of the relevant legal services were performed in Michigan. That reality strongly supports the application of D.C. law.

Because we hold that D.C. law applies to the Retention Letter, we need not decide whether Michigan law bars the plaintiff from recovering legal fees incurred while representing itself. Michigan law simply does not apply.

As the trial court concluded, the plain language of the Retention Letter permits the recovery of the "costs of collecting any fees due and owing, including reasonable attorney fees and expenses . . . ." J.A. 210; *see Bode & Grenier, LLP*, 31 F. Supp. 3d at 119–20. The Retention Letter nowhere precludes Bode & Grenier from recovering fees incurred while representing itself. That is enough to resolve the matter.

## V

For the foregoing reasons the district court is

*Affirmed.*